ROBERT H. GILBERT v. JOE Q. THOMAS, JR.

No. 828SC967

(Filed 18 October 1983)

**Appeal and Error § 59.2; Rules of Civil Procedure § 15— appellate review of directed verdict—inability to consider theories on appeal that were not before trial court**

In a breach of contract action where the issue at trial, as stipulated in a pre-trial order and as defined in the complaint, required evidence of an agency relationship to support the action for breach of contract, appellant could not offer on appeal five new theories to establish the existence of a contract that were not considered at the trial level since to do so would be to review the case "as the parties might have tried it." G.S. 1A-1, Rules 15 and 16.

APPEAL by plaintiff from *Rouse, Judge.* Judgment entered 27 April 1982 in Superior Court, LENIOR County. Heard in the Court of Appeals 22 August 1983.

Plaintiff appeals from trial court's granting of motion for directed verdict at close of plaintiff's evidence in action for breach of contract.

*Wallace, Barwick, Landis, Rodgman & Bower, P.A., by P. C. Barwick, Jr. and Joseph S. Bower, for plaintiff appellant.*

*White, Allen, Hooten, Hodges & Hines, P.A., by Thomas J. White and John R. Hooten, for defendant appellee.*

BECTON, Judge.

I

On 24 March 1979, plaintiff Robert H. Gilbert, made the high bid to purchase the J. W. Gates Farm at an auction conducted by Barrow-Kennedy Auction Company (Barrow-Kennedy). Barrow-Kennedy acted as selling agent for the true owners, Gates' heirs. Originally the farm had been offered at auction as nine separate tracts, identified as such on the Barrow-Kennedy sales map. Barrow-Kennedy next offered to sell the farm in groups of two or three tracts, and then, even later, offered to sell the farm as a whole. According to the Barrow-Kennedy map, only two of the nine tracts, tracts 8 and 9, carried tobacco allotments. Since the total price of the entire farm to Gilbert was higher than anticipated, Gilbert advertised to sell his right to purchase twenty acres of the farm, tracts 1 and 2 on the Barrow-Kennedy map. The closing on all the tracts had to be made on or before 24 April 1979.

On 11 April 1979 defendant, Joe Q. Thomas, Jr., agreed in writing "to purchase Tract Number 1 and Number 2 of the Gates Farm (Barrow-Kennedy Map dated 24 March 1979) for the price of $51,250.00." The existence of a tobacco allotment was not discussed. Under the terms of the agreement, Gilbert received $1,250.00 as a binder. The balance was to be paid to Barrow-Kennedy on 23 April 1979.

The following day, 12 April 1979, Thomas entered into a contract of sale with W. W. Kennedy of Barrow-Kennedy to purchase

Tracts 1 and 2 for $51,250.00. The contract specifically stated "These tracts do not contain tobacco allotments with them." Under the terms of the contract, Thomas made an $11,250 down payment—$10,000 deposited with Kennedy, and the $1,250 he previously paid to Gilbert. The balance was due on or before 24 April 1979.

Kennedy testified that he informed Thomas prior to signing the 12 April 1979 contract that Thomas would have to execute a U.S. Department of Agriculture, ASCS Form 155 before the closing on 23 April 1979. The sale of the farm had precipitated a reallocation of the tobacco allotments. Form 155 served to waive any tobacco allotment granted to Tracts 1 and 2. Thomas assured Kennedy that he would sign the form before the closing, but he failed to do so, despite repeated reminders by Kennedy. As a result, the ASCS committee gave Thomas 2219 pounds of the Gates Farm's tobacco allotment. Further, the deed conveying Tracts 1 and 2 to Thomas contained no reservation of the tobacco allotment to the grantor.

Gilbert brought this action against Thomas for breach of the 12 April 1979 contract and for fraud. At the close of Gilbert's evidence, Thomas was granted a directed verdict. Gilbert appeals.

II

Gilbert excepts and assigns error to the trial court's granting of Thomas' motion for directed verdict. Gilbert argues that there was sufficient evidence of "the existence of a contract between defendant and plaintiff" to withstand the motion for directed verdict.

On appeal, Gilbert frames the question for this Court in the broad language of the motion for directed verdict. "In passing upon a trial judge's ruling as to a directed verdict, we cannot review the case as the parties might have tried it; rather, we must review the case as tried below, as reflected in the record on appeal." *Tallent v. Blake*, 57 N.C. App. 249, 252, 291 S.E. 2d 336, 339 (1982). In the pleadings, Gilbert based his actions for breach of contract and for fraud solely on the 12 April 1979 contract. He alleged that Kennedy acted as his agent in the transaction. The parties later stipulated in a pre-trial order that the Gilbert's issue on breach of contract was: "Did the defendant breach his contract

with the plaintiff as alleged in the complaint?" A pre-trial order "controls the subsequent course of the action, unless modified at the trial to prevent *manifest injustice.*" N.C. Gen. Stat. § 1A-1, Rule 16 (1969) (emphasis added). In this case, Gilbert had not asked leave to modify the pre-trial order prior to the granting of the motion. Thus, the narrow issue before the trial court required evidence of an agency relationship to support the action for breach of the 12 April 1979 contract.

Gilbert offers this Court five new theories to establish the existence of a contract between plaintiff and defendant: (a) the 11 April 1979 agreement created a binding contract; (b) the 11 April 1979 agreement is a contract of assignment; (c) the reservation of the tobacco allotment was omitted by Gilbert and Thomas from the 11 April 1979 contract by mutual mistake and the parties should be allowed to reform the contract; (d) Gilbert is an intended beneficiary of the 12 April 1979 contract; and (e) the 12 April 1979 contract is a new substitute contract—a novation. We are unable to consider these different theories in passing upon the trial judge's ruling on the motion for directed verdict. To do so would be to review the case "as the parties might have tried it." *Tallent* at 252, 291 S.E. 2d at 339.

Under North Carolina's "notice theory of pleading," a trial proceeds on the issues raised by the pleadings unless the pleadings are amended. *Roberts v. William N. and Kate B. Reynolds Mem. Park,* 281 N.C. 48, 187 S.E. 2d 721 (1972). If an issue not raised by the pleadings is tried by the "implied consent" of the parties, the pleadings are deemed amended, as in a contract case in which plaintiff, without objection, presents evidence of negligence. *See* N.C. Gen. Stat. § 1A-1, Rule 15(b) (1969); 1 McIntosh, *North Carolina Practice and Procedure* § 970.80 (Supp. 1970). When, however, the evidence used to support the new issue would also be relevant to support the issue raised by the pleadings, the defendant has not been put on notice of plaintiff's new or alternate theory. Therefore, defendant's failure to object does not constitute "implied consent." *See,* 1 McIntosh, *North Carolina Practice and Procedure* § 970.80 (Supp. 1970); 6 C. Wright and A. Miller, *Federal Practice and Procedure* § 1493, at 456 & n. 71 (1971).

In this case, the evidence relied on by Gilbert to support his new theories was essential to proving the original agency theory. Thomas was not put on notice of Gilbert's new theories. Rule 15(b) allows "amendment by implied consent to change the legal theory of the case so long as the opposing party has not been prejudiced in presenting his case, i.e., where he had a fair opportunity to defend his case." *Roberts* at 59; 187 S.E. 2d at 727.

By analogy, in ruling on a motion for directed verdict, the trial judge must have a fair opportunity to evaluate the evidence on *all issues*. In this case, the trial judge's focus had been narrowed by the pretrial order. Even assuming that "manifest injustice" might allow an amendment by implied consent, the nature of the evidence presented failed to put Thomas and the trial judge on notice. Gilbert had the burden of asking leave of the court to modify the pleadings and pre-trial order, thereby broadening the trial judge's evaluation of the evidence and issues.

Since the agency theory was the sole theory before the trial court, we are unable to consider Gilbert's additional theories on appeal. "A party may not acquiesce in the trial of his case upon one theory below and then argue on appeal that it should have been tried upon another. *Bryan Builder's Supply v. Midyette*, 274 N.C. 264, 162 S.E. 2d 507 (1968) . . . This is true with respect to a motion for directed verdict." *Tallent* at 252, 291 S.E. 2d at 339.

For the foregoing reasons, we uphold the trial court's granting of Thomas' motion for a directed verdict.

Affirmed.

Chief Judge VAUGHN and Judge HILL concur.