**Mary R. PHILLIPS, Plaintiff,**

v.

**J.P. STEVENS & CO., INC., a Corp.; West Point Pepperell, Inc., a Corp.; Farley Industries, Inc., a Corp., George McDougald, an Individual; James McPhatter, an Individual; and Does 1–20, Inclusive, Defendants.**

**No. 3:92CV00094.**

United States District Court,
M.D. North Carolina,
Rockingham Division.

Feb. 26, 1993.

Robert E. Sheahan, Ronda Lovell Lowe, Robert E. Sheahan & Associates, High Point, NC, for plaintiff.

Alan Bruce Clarke, Charles Matthew Keen, Ogletree, Deakins, Nash, Smoak & Stewart, Raleigh, NC, Fred W. Suggs, Jr., Ogletree, Deakins, Nash, Smoak & Stewart, Greenville, SC, Patricia L. Holland, Cranfill, Sumner & Hartzog, Raleigh, NC, for defendants.

## MEMORANDUM OPINION

OSTEEN, District Judge.

## I. STATEMENT OF THE CASE

Plaintiff Mary Phillips initiated this action by filing a complaint on February 21, 1992, against Defendants J.P. Stevens & Co., Inc., West Point–Pepperell, Inc., Farley Indus-tries, Inc., George McDougald and James McPhatter ("Defendants"). The complaint contains several causes of action arising out of Plaintiff's claims that she was subjected to sexual harassment and was discharged from her employment because of her sex and in retaliation for her complaints of sexual harassment.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants move to dismiss the following causes of action on the ground that they fail to state a claim upon which relief can be granted:

(1) The negligent hiring claim in the third cause of action;

(2) The fifth cause of action for breach of an implied covenant of good faith and fair dealing;

(3) The sixth cause of action for invasion of privacy;

(4) The seventh cause of action for wrongful discharge in violation of public policy or in bad faith;

(5) The third, fifth, and seventh causes of action as they pertain to Defendants McDougald and McPhatter; and

(6) The requests for jury trial and compensatory and punitive damages pursuant to the first and second causes of action.

For the reasons discussed below, the court will (1) grant Defendants' motion to dismiss the negligent hiring claim in the third cause of action, but the negligent retention claim is not dismissed; (2) grant Defendants' motion to dismiss the fifth cause of action for breach of an implied covenant of good faith and fair dealing; (3) grant Defendants' motion to dismiss the sixth cause of action for invasion of privacy; (4) grant Defendants' motion to dismiss the seventh cause of action, as to the claim for discharge in bad faith, but will deny Defendants' motion to dismiss as to Plaintiff's claim for wrongful discharge in violation of public policy; (5) grant Defendants' motion to dismiss the third, fifth, and seventh causes of action as they pertain to Defendants McDougald and McPhatter; (6) the court will defer ruling on Defendants' motion to dismiss Plaintiff's requests for jury trial, compensatory damages, and punitive dam-

ages until a higher court determines if the Civil Rights Act of 1991 should apply retroactively or prospectively, or this case proceeds to a stage where a ruling on the retroactivity issue is required.

## II. FACTUAL ALLEGATIONS

Defendant West Point–Pepperell, Inc. ("Westpoint") operates a textile manufacturing plant, known as the Scotland Plant, in Wagram, North Carolina. The plant was formerly owned and operated by Defendant J.P. Stevens. Plaintiff Mary Phillips was hired by Stevens as a weaver in August 1982. She alleges that shortly after she began working for Stevens her then supervisor, Joe Miller, approached her and asked her if she would go out with Weave Room Superintendent C.D. Stone. She claims that this harassment continued for a five-month period until she reported it to Personnel Manager Larry Ingram. According to the complaint, Ingram discussed the matter with Stone and Miller and told them to stop harassing Plaintiff. Plaintiff further alleges that Ingram told her, in effect, not to report further instances of sexual harassment.

Plaintiff alleges that several years later she was sexually harassed by two other supervisors, Defendants McDougald and McPhatter. She claims that McDougald also prevented her from reporting harassment to Ingram. Plaintiff alleges that in February 1990, she was pregnant and began hemorrhaging while at her job station. Pursuant to a work rule, Plaintiff went to her supervisors, McPhatter and McDougald. She told them that she had an emergency and requested permission to leave company premises during work time. After some forty-five minutes of questioning, Plaintiff told them that she needed to go to the hospital because she was pregnant and hemorrhaging. Thereafter, Plaintiff alleges, McPhatter and McDougald refused to let Plaintiff see the company nurse or leave the premises until she identified the father of her child. Plaintiff eventually went to the hospital, but she had lost the child. Plaintiff was told that had she arrived earlier at the clinic at the onset of the bleeding, they could have possibly saved her baby. After Plaintiff returned to

work, the Plaintiff learned that Defendants McPhatter and McDougald had told Plaintiff's fellow employees that she had been pregnant and the identity of the child's father.

The company states that in October 1990, the company instituted a new productivity monitoring system. Under this system, the time the looms are not operating is down time or "weaver's loss." The percentage of weaver's loss is kept for each weaver. Between October 1990 until February 1991, Plaintiff received warnings concerning her allegedly unacceptable weaver's loss. She was terminated in February 1991, allegedly for excessive weaver's loss.

## III. LEGAL DISCUSSION

### A. Negligent Hiring

■ In her third cause of action, Plaintiff alleges that Defendants were negligent in the hiring and retention of McDougald, Miller, McPhatter, and Ingram. Defendant concedes that the complaint adequately alleges a claim for negligent retention for purposes of Rule 12(b)(6). However, Defendants contend that Plaintiff fails to state a claim for negligent hiring.

To maintain an action for negligent hiring under North Carolina law, Plaintiff must prove "that [s]he has been injured by reason of carelessness or negligence due to the incompetency of the fellow servant, and that the master has been negligent in employing ... such incompetent servant, after knowledge of the fact." *Pleasants v. Barnes,* 221 N.C. 173, 177, 19 S.E.2d 627, 629 (1942). Thus, Phillips must establish that the four named individuals committed a tortious act resulting in injury and that before Stevens hired the four managers it knew, or had reason to know, of their proclivity to commit such acts.

Here, there are no allegations in the complaint that Stevens knew, or had reason to know, of any tortious propensities of McDougald, McPhatter, Miller, or Ingram at or *before* they were hired. In her response, Plaintiff cites two paragraphs of her complaint in which she alleges that Ingram knew of harassment by Miller and that McPhatter

knew of harassment by McDougald. However, this knowledge, as alleged, occurred *after* Miller and McPhatter were employed. Thus, the claim for negligent hiring is dismissed. The negligent retention claim is not.

### B. Breach of Implied Covenant of Good Faith and Fair Dealing

North Carolina does not recognize a separate exception to employment at will for a bad faith discharge or violation of an implied covenant of good faith. *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 358–59, 416 S.E.2d 166, 173 (1992). Thus, the claim for breach of an implied covenant of good faith and fair dealing is dismissed.

### C. Invasion of Privacy

The term "invasion of privacy" has been used to describe four distinct torts. The four different branches that have been recognized throughout the country are:

1. Appropriation for the defendant's advantage of the plaintiff's name or likeness;

2. Intrusion upon plaintiff's seclusion or solitude or into his or her private affairs;

3. Public disclosure of private facts about the plaintiff;

4. Publicity which places the plaintiff in a false light in the public eye.

*Renwick v. News and Observer Pub. Co.*, 310 N.C. 312, 322, 312 S.E.2d 405, 411 (1984).

North Carolina has recognized only the first type of invasion of privacy—misappropriation of plaintiff's name or likeness. *Flake v. Greensboro News Co.*, 212 N.C. 780, 195 S.E. 55 (1938). North Carolina has expressly rejected two of the versions of this tort. *Hall v. Post*, 323 N.C. 259, 372 S.E.2d 711 (1988) (court declines to recognize disclosure of private facts); *Renwick*, 310 N.C. 312, 312 S.E.2d 405 (court declines to recognize "false light" privacy claim).

Plaintiff argues that she states a claim under the second type of invasion of privacy—the category that North Carolina courts have neither accepted nor denied. Since North Carolina's own state courts have declined to adopt this tort, it would be inappropriate for the federal court to do so either. Consequently, this claim is dismissed.

### D. Wrongful Discharge in Violation of Public Policy or in Bad Faith (*Coman* Claims)

North Carolina courts have long followed the rule of employment at will. Absent a contract for a definite term, an employee may be discharged at any time for any reason at the will of the employer. *See, e.g., Still v. Lance*, 279 N.C. 254, 182 S.E.2d 403 (1971). However, the courts have created a public policy exception to the at-will rule.

The public policy exception was first recognized by the North Carolina Court of Appeals in *Sides v. Duke Hospital*, 74 N.C.App. 331, 328 S.E.2d 818 (1985). In *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989), the North Carolina Supreme Court adopted the public policy exception to employment at will.

In *Amos*, 331 N.C. 348, 416 S.E.2d 166, the North Carolina Supreme Court revisited the *Coman* public policy exception and clarified the precise scope of the exception. The court began by reiterating that there is a public policy exception to employment at will in North Carolina. While not attempting to state an exclusive list of what constitutes public policy, the Supreme Court held that "at the very least public policy is violated when an employee is fired in contravention of the express policy declarations contained in the North Carolina General Statutes." *Id.* at 352, 416 S.E.2d at 169.

Under *Amos*, the fact that Plaintiff has a remedy under Title VII in no way diminishes her tort claim for wrongful discharge. *Amos* makes clear that the availability of an alternative remedy does not prevent a plaintiff from seeking tort remedies for wrongful discharge in violation of public policy. *Amos*, 331 N.C. at 354–58, 416 S.E.2d at 170–73.

Finally, *Amos* also held that there is not a separate and distinct "bad faith" exception to employment-at-will in North Carolina. *Id.* at 358–59, 416 S.E.2d at 173.

■ In the case at bar, Plaintiff has alleged a violation of the public policy of North Carolina as expressed by N.C.G.S. § 143–422.2.[1] The public policy of North Carolina expressed in N.C.G.S. § 143–422.1 et seq. is essentially identical to the public policy articulated in Title VII. *North Carolina Dept. of Correction v. Gibson*, 308 N.C. 131, 141, 301 S.E.2d 78, 85 (1983). Thus, since Plaintiff states a claim under Title VII, she states a claim for wrongful discharge in violation of the public policy expressed in N.C.G.S. § 143–422.2.[2] Of course, insofar as Plaintiff's claim is characterized as wrongful discharge in bad faith, that claim is dismissed.

### E. The Third, Fifth, and Seventh Causes of Action as to McDougald and McPhatter

The third cause of action as to negligent hiring is already dismissed, as is the fifth cause of action, and the seventh cause of action as to Plaintiff's claim for discharge in bad faith. What remains of the third and seventh causes of action cannot be maintained against the individual Defendants, McDougald and McPhatter. As to the third cause of action, negligent retention, McDougald and McPhatter obviously did not retain themselves, nor did they retain Miller or Ingram.

■ Similarly, the seventh cause of action is based on termination of Plaintiff's employment and the individual Defendants are not parties to the employment agreement. *See Williams v. Vogler*, No. 6:91–CV–00637 at 4 (M.D.N.C. March 6, 1992) (wrongful discharge claim against a manager dismissed because no allegation that manager was a party to employment contract). Thus, these causes of action are dismissed as to McDougald and McPhatter.

### F. Requests for Jury Trial and Compensatory and Punitive Damages Pursuant to the First and Second Causes of Action

The Civil Rights Act of 1991 amended Title VII to provide for jury trials and the potential for compensatory and punitive damages. Under the unamended version of Title VII, there is no right to jury trial or compensatory or punitive damages. *Keller v. Prince George's County*, 827 F.2d 952, 955 (4th Cir. 1987). The alleged conduct which forms the basis of Plaintiff's Title VII claims occurred before the amendment's November 21, 1991, effective date.

The Civil Rights Act of 1991 does not clearly state whether it should apply retroactively or only prospectively. The legislative history is likewise ambiguous. Judicial decisions are on both sides of the issue. For example, in *Patterson v. McLean Credit Union*, 784 F.Supp. 268 (M.D.N.C.1992), Judge Ward held that the Act should not be applied retroactively. Similarly in *Percell v. Int'l Business Machines, Inc.*, 785 F.Supp. 1229 (E.D.N.C.1992), Judge Dupree found that the statute should not have retroactive effect. However, in *Leach v. Northern Telecom, Inc.*, 790 F.Supp. 572 (E.D.N.C.1992), Judge Britt denied a motion to dismiss the request for a jury trial and damages based on the 1991 Act. This decision was based on grounds of judicial economy, and entailed no analysis of the issue on its merits.

The court at this stage of the proceedings declines to rule on this issue. Given the practical realities of the civil docket, it may be quite some time until this case is actually tried. During such time, it is possible that either the United States Supreme Court or the Fourth Circuit Court of Appeals may rule on this issue and a definitive answer to this question will be given. Declining to rule on this issue should not unfairly prejudice

---

**1.** N.C.G.S. § 143–422.2 provides that:

It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

**2.** Alternatively, Plaintiff alleges her termination was in violation of North Carolina's laws against prostitution, since she refused to participate in sexual conduct in order to keep her job. N.C.G.S. § 14–203. The court need not decide the case on this ground, but notes that a similar analysis was accepted by the Fourth Circuit in *Harrison v. Edison Bros.*, 924 F.2d 530, 534 (4th Cir.1991).

either party, since it does not affect the liability issue. The issue may be raised again at a summary judgment or pre-trial stage of the litigation and, of course, the court will rule on this issue once a ruling becomes necessary.