JOHN D. HOGAN AND WIFE, JANET S. HOGAN, PLAINTIFFS v. THE CITY OF WINSTON-SALEM, DEFENDANT

No. COA95-305

(Filed 6 February 1996)

### Retirement § 9 (NCI4th); Constitutional Law § 143 (NCI4th)— amendment to retirement code—unconstitutional impairment of disabled officer's contract

Plaintiff police officer's contractual rights were unconstitutionally impaired by defendant city's amendment of its retirement code after plaintiff's injury which took away the unqualified right of an officer to obtain retirement disability benefits when an injury prevented the officer from performing his sworn duties and

permitted defendant to transfer the officer to unsworn duties since (1) plaintiff, who had worked for more than twenty years as a sworn police officer of defendant, had vested contractual rights in the retirement plan after five years of creditable service; (2) plaintiff and his wife would suffer significant reductions in their retirement allowances as a result of the amendment; and (3) the impairment was not reasonable and necessary to serve an important public purpose, as defendant's evidence was only relevant to show that the amendment was to benefit and to allow officers to remain employed in nonsworn duties rather than retire upon their disability, but this purpose was not reasonable and necessary as it pertained to this plaintiff.

**Am Jur 2d, Constitutional Law §§ 592, 597, 690; Municipal Corporations, Counties, and Other Political Subdivisions §§ 495, 500, 852.**

**Vested right of pensioner to pension. 52 ALR2d 437.**

Judge WALKER concurring in part and dissenting in part.

Appeal by plaintiffs and defendant from Order entered 29 December 1994 by Judge William H. Freeman in Forsyth County Superior Court. Heard in the Court of Appeals 6 December 1995.

*James and Jones, P.L.L.C., by Randolph M. James and Howard C. Jones II, for plaintiffs.*

*Womble Carlyle Sandridge & Rice, by Roddy M. Ligon, Jr., Gusti W. Frankel, and Steven D. Draper, for defendant.*

JOHNSON, Judge.

Defendant City appeals from that part of the Order entered on 29 December 1994 granting plaintiffs' motion for summary judgment as to plaintiffs' seventh cause of action and declaring that the 20 August 1990 Amendment to Chapter 15, Article II of the Retirement Code of the City of Winston-Salem is unconstitutional as applied to plaintiffs. Plaintiffs appeal from that part of the Order granting defendant's motion for summary judgment as to plaintiffs' first, second, third, fourth, fifth and sixth causes of action.

The facts are as follows: Plaintiff was a sworn officer of the Winston-Salem Police Department for over twenty years and made mandatory payments into the City's Retirement Plan (the Plan) for

police officers for over twelve years. Plaintiff's wife, Janet S. Hogan, became a beneficiary under the Plan in 1978. On 2 August 1989, plaintiff injured his back while working for the police department and during the scope of his employment.

On 20 August 1990, subsequent to plaintiff's injury, the Board of Aldermen enacted an ordinance to amend Chapter 15, Article II of the City Code which governs the Plan. Prior to the Amendment, and on the date of plaintiff's injury, the Retirement Code provided that if an officer was disabled from performing his duties, he was entitled to retire under the Retirement Code, and that the City "did not have the ability to transfer these members to other police duties."

Defendant's interpretation and application of the Amendment to plaintiff took away the unqualified right of a disabled officer to obtain retirement when an injury prevented the officer from performing his sworn duties, instead, the City may transfer a disabled officer to other "unsworn duties within the police department."

Paragraph (g) of Section 16 of the Amendment provides the following:

Upon the recommendation of the Police Chief and/or the Personnel Director, subject to the review and recommendation of the Retirement Commission to the City Manager, an employee disabled for the purposes of sworn employment may be transferred to other sworn and nonsworn duties within the Police Department. Should a member of the plan desire transfer to a non-sworn position outside of the Police Department, the City will assist with the transfer, insofar as possible and practicable. The following provisions will apply to a transfer to another position under this section:

(i) In the opinion of the medical review board the employee is capable of satisfactorily performing the new duties;

(ii) The compensation of the new position is at least five (5) per cent higher than the employee's sworn compensation if the employee elects to remain an active member of the plan. The compensation of the new position is equal to the present compensation, if the employee elects to terminate from the city plan.

(iii) The same rules for vesting of benefits and transfer of benefits are applied as in section 15-58.

(iv) A disabled employee transferred to a non-sworn or other sworn position of lower pay range than the sworn position, will not be subject to limitations on merit pay increases applicable to the non-sworn position.

(v) The City plan will reimburse to the City operating fund any cost differential resulting from the provisions of Section 16(g).

On 7 March 1991, Dr. Thomas opined that plaintiff was "totally and permanently disabled to return to his . . . usual occupation." On 15 March 1991, plaintiff submitted an application for retirement due to disability with the Retirement System Division of the Department of State Treasurer, State of North Carolina. On 15 March 1991, plaintiff also submitted an application for disability retirement from the Police Department, effective 1 June 1991. On 3 June 1991, plaintiff's treating orthopedic surgeon, Dr. Holthusen, rated plaintiff's permanent partial disability to his back at fifty percent. On 25 June 1991, Dr. Holthusen concluded that plaintiff was "totally and permanently disabled to return to his . . . usual occupation."

Defendant alleged that the "Police Chief offered Mr. Hogan three non-sworn positions." However, defendant admitted that "on June 16, 1991, the City and plaintiff John D. Hogan received notice from Dr. B.R. Thomas that John D. Hogan was unable to perform any of the alternative employee positions recommended by the City."

On 24 July 1991, plaintiff received notice from the State of North Carolina that his Disability Retirement was approved. Prior to the Amendment, a disabled officer whose retirement was approved under the State Plan would also be approved under the City Plan. The City denied plaintiff's request for retirement due to disability pursuant to an Amendment to the Plan which occurred after plaintiff's injury. The City used the Amendment to deny plaintiff his right to receive retirement benefits when he became unable to perform his sworn duties. Plaintiff alleges that he received no opportunity for a hearing regarding the City's decision.

During plaintiff's employment, he was repeatedly told by the Chief of Police and other officers that defendant would look after him and that if he was injured "in the line of duty" he would be allowed to retire with "no questions asked." When defendant failed to honor these promises after plaintiff's injury, plaintiff felt like defendant had abandoned him. Plaintiff began to have suicidal thoughts, began drinking heavily, and became very distraught. Plaintiff sought treat-

ment for the distress he suffered from Dr. Jerry Noble, a licensed, practicing clinical psychologist in North Carolina. Dr. Noble's diagnosis of plaintiff was "major [d]epression, single episode without psychotic features; generalized anxiety disorder; alcohol abuse intermittent, insomnia; and chronic pain."

Plaintiffs filed suit against defendant, alleging seven causes of action: (1) Arbitrary and Capricious Conduct and Lack of Due Process under the United States Constitution, the North Carolina Constitution, the laws of the United States and the State of North Carolina; (2) Breach of Contract; (3) Intentional Infliction of Emotional Distress; (4) Negligent Infliction of Emotional Distress; (5) Failure to Notify Plaintiffs of their Continuation Rights under COBRA; (6) Bad Faith and Breach of Duty of Good Faith; and (7) Request for Declaration that the 20 August 1990 Amendment of Chapter 15, Article II of the Retirement Code of the City of Winston-Salem is Unconstitutional as Applied for Interference with Plaintiffs' Contractual Rights.

The first issue to be addressed in this appeal is whether the trial court erred in granting plaintiffs' motion for summary judgment as to their seventh cause of action and declaring that the 20 August 1990 Amendment of Chapter 15, Article II of the Retirement Code of the City of Winston-Salem was unconstitutional as applied to plaintiffs in this case.

Article I, Section 10, Clause 1 of the United States Constitution states, "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." This prohibition is applicable to municipalities. *Northern P. R. Co. v. Minnesota ex rel. Duluth,* 208 U.S. 583, 52 L. Ed. 630 (1908). In determining whether the Amendment in the case *sub judice* unconstitutionally impairs plaintiffs' contractual rights, this Court in *Simpson v. N.C. Local Gov't Employees' Retirement System,* 88 N.C. App. 218, 363 S.E.2d 90 (1987), *aff'd per curiam,* 323 N.C. 362, 372 S.E.2d 559 (1988), adopted a three-step inquiry which became the basis for determining if the State, or in this case, the City, violated the Contract Clause. We must consider the following: (1) whether a contractual obligation arose under the statute; (2) whether the State's actions impaired an obligation of the State's contract; and (3) whether the impairment, if one existed, was "reasonable and necessary to serve an important public purpose." *Id.* at 225, 363 S.E.2d at 94.

Our first inquiry is to determine whether plaintiffs had contractual rights in the Plan. Our Court has held that public employees have contractual rights in their pension funds. *See Simpson*, 88 N.C. App. 218, 363 S.E.2d 90; *Faulkenbury v. Teachers' & State Employees' Retirement System*, 108 N.C. App. 357, 424 S.E.2d 420, *aff'd per curiam*, 335 N.C. 158, 436 S.E.2d 821 (1993); *Woodard v. Local Governmental Employees' Retirement System*, 108 N.C. App. 378, 424 S.E.2d 431, *aff'd per curiam*, 335 N.C. 161, 435 S.E.2d 770 (1993). Defendant City argues that plaintiffs' contractual rights in the Plan did not vest because plaintiff had not been approved for retirement benefits pursuant to disability on the date that the Amendment was passed. However, the Court in *Simpson* stated that "[i]n North Carolina the right of members of the Retirement System to retirement benefits vests after five years of creditable service." *Simpson*, 88 N.C. App. at 219, n. 2., 363 S.E.2d at 91, n. 2. *See also* North Carolina General Statutes § 128-27(c) (1994) (a member of the State plan must have "five or more years of creditable service" before eligibility for disability retirement unless injured in an accident in the line of duty). As it is undisputed that plaintiff had attained more than five years of creditable service before his injury, before the date of the Amendment and before the date he submitted his application for disability retirement, defendant's argument is without merit. Further, Section 15-56 of defendant City's Plan requires a member to have "five (5) or more years of creditable service" prior to becoming eligible for disability retirement. This Court has stated that:

> [a] public employee has a right to expect that the retirement rights bargained for in exchange for his loyalty and continued services, and continually promised him over many years, will not be removed or diminished. Plaintiffs . . . had a contractual right to rely on the terms of the retirement plan as these terms existed at the moment their retirement rights became vested.

*Simpson*, 88 N.C. App. at 224, 363 S.E.2d at 94.                              .

Defendant City contends that in accordance with *Griffin*, they can amend or make changes in the Retirement Disability Plan and apply the Amendment to members who had not yet retired on disability retirement at the time the change became effective. *Griffin v. Bd. of Com'rs. of Law Officers Retirement Fund*, 84 N.C. App. 443, 352 S.E.2d 882, *dismissal allowed and disc. review denied*, 319 N.C. 672, 356 S.E.2d 776 (1987) (rights do not vest until the date of disability retirement). Defendant's argument that this Court's previous

opinion in *Griffin* is more applicable than the Supreme Court's per curiam affirmation of this Court's decision in *Simpson* is without merit.

Our second inquiry is whether the Amendment impaired plaintiffs' contractual rights. Defendant's argument that plaintiffs suffered no impairment of their contractual rights is unpersuasive. Although it is evident that plaintiffs will not suffer significant reductions in the retirement allowances, plaintiffs will, however, suffer an impairment, in that, they would be denied their right to retirement benefits—a right that they were entitled to on the date plaintiff was injured within the course of his employment, and a right upon which they had relied upon prior to the Amendment. In finding that an impairment of contractual benefits has occurred, it must be shown that there were "significant reductions" in the retirement benefits. *See Simpson*, 88 N.C. App. at 225, 363 S.E.2d at 94; *Faulkenbury*, 108 N.C. App. at 371, 424 S.E.2d at 427. The Amendment at issue in the instant case completely deprives plaintiff of his right to disability retirement upon being injured in the line of duty. Plaintiff would be required to perform nonsworn duties even though his physician has concluded that he is unable to perform in the three nonsworn positions that defendant offered. This is a significant reduction or impairment of plaintiffs' rights in that they would be denied benefits that they would have received prior to the Amendment. Accordingly, the second prong was met.

Our third inquiry is whether the Amendment was reasonable and necessary to serve an important public purpose. Defendant City's, Finance Director, Loris Colclough, in an affidavit, stated that the purpose of the Amendment was to permit disabled officers to transfer to another position so that they could continue to have productive employment with the City at the same salary and pay increases that they would have received in their sworn position. The City has not presented any evidence that the Amendment was reasonable and necessary to protect an important state interest in relation to the facts of this case, particularly in reference to this plaintiff who has been employed with the City for over twenty years and became vested in the retirement system prior to the time the policy changes were enacted. Rather, the City's evidence is only relevant to show that the Amendment was to benefit and to allow officers to remain employed in nonsworn duties rather than retire upon their disability. Although commendable, this purpose is not reasonable and necessary as it pertains to this plaintiff. In *Simpson*, the Court stated that it was not per-

suaded by the explanation given by the Deputy Treasurer and Director of the Retirement Systems Division in an affidavit which stated that the changes made to the retirement requirements were made to correct inequities in the system and that the changes were reasonable and necessary to serve an important state interest. *Simpson*, 88 N.C. App. 218, 363 S.E.2d 90. Likewise, the evidence in this action does not show that the Amendment was necessary and reasonable to protect an important state interest where an officer has become vested prior to its enactment. The Amendment is unreasonable as pertains to plaintiffs because they are being denied an unequivocal right to disability retirement upon being disabled, by an Amendment which became effective after plaintiff's injury occurred. While there may be an issue of material fact as to whether the Amendment was reasonable and necessary in relation to officers who had not become vested at the time of its enactment, there is no genuine issue of material fact as to whether the Amendment was reasonable and necessary as to an officer who had become vested prior to its enactment. Accordingly, as there was no genuine issue as to any material fact, plaintiffs were properly granted summary judgment as a matter of law.

Plaintiffs also argue that the Amendment violated the due process guarantees of the United States and North Carolina Constitutions; however, we need not address this argument in light of our holding that plaintiffs' grant of summary judgment was without error.

Plaintiffs' cross-appeal from that portion of the trial court's Order granting summary judgment in favor of defendant, and dismissing plaintiffs' first, second, third, fourth, fifth and sixth causes of action.

Plaintiffs first argue that the trial court erred by granting summary judgment on its second claim for breach of contract. We disagree. Defendant may amend ordinances so long as the amendment is not unconstitutional. As we have affirmed the trial court's decision that the Amendment herein is unconstitutional as applied to plaintiff in that his contractual rights have been impaired, no breach of contract occurs until the Retirement System fails to deliver plaintiffs' vested benefits according to the previous unamended contract. Thus, summary judgment was properly granted on this claim.

Plaintiffs next argue that the trial court erred by granting summary judgment on plaintiffs' claim for breach of duty of good faith. Plaintiffs contend that defendant breached its "covenant of good faith and fair dealing" by passing the Amendment and depriving plaintiffs

of benefits. Plaintiffs' claim for breach of an implied covenant of good faith and fair dealing is without merit. *See Phillips v. J. P. Stephens & Co., Inc.,* 827 F. Supp. 349, 352 (M.D.N.C. 1993); *Amos v. Oakdale Knitting Co.,* 331 N.C. 348, 359, 416 S.E.2d 166, 173 (1992).

Plaintiffs also argue that the trial court erred by granting summary judgment on their claim for arbitrary and capricious conduct and lack of due process under the United States Constitution, the North Carolina Constitution and the laws of the United States and the State of North Carolina. A review of the evidence reveals that plaintiffs were not denied due process as they received notice and had an opportunity to be heard, and they have failed to show that the denial of the benefits was arbitrary or capricious. Additionally, as plaintiffs failed to allege a claim under § 1983 in their complaint and to argue this claim before the trial court, they may not argue this claim on appeal. *See Gilbert v. Thomas,* 64 N.C. App. 582, 586, 307 S.E.2d 853, 856 (1983). Thus, summary judgment was properly granted.

Plaintiffs argue that the trial court erred by granting summary judgment on their claim for failure to notify plaintiffs of their continuation rights under COBRA. Our review of the record reveals that plaintiff had notice of his rights concerning coverage; therefore, this argument is without merit.

Plaintiff also argue that the trial court erred by granting summary judgment on plaintiffs' claim for intentional infliction of emotional distress and negligent infliction of emotional distress. These arguments must also fail in that plaintiffs failed to produce a sufficient forecast of evidence to survive summary judgment on these claims.

For the foregoing reasons, the trial court's Order is affirmed.

Affirmed.

Judge WYNN concurs.

Judge WALKER concurs in part and dissents in part.

Judge WALKER concurring in part and dissenting in part.

I respectfully dissent from the majority's opinion affirming the trial court's granting of plaintiffs' motion for summary judgment as to plaintiffs' seventh cause of action and declaring that the 20 August

1990 Amendment of Chapter 15, Article II, of the Retirement Code of the Code of the City of Winston-Salem was unconstitutional.

The question of whether an act unconstitutionally impairs the right to contract and violates the United States Contract Clause is one courts must resolve on a case by case basis. *Bailey v. State of North Carolina*, 330 N.C. 227, 244, 412 S.E.2d 295, 305 (1991), *cert. denied*, 504 U.S. 911, 118 L. Ed. 2d 547 (1992). Not every impairment of contractual obligations by a state violates the Contract Clause. *Maryland State Teachers Ass'n v. Hughes*, 594 F. Supp. 1353, 1360 (D. Md. 1984). In acting to protect the general welfare of its citizens and in exercising its police power, a state may constitutionally impair its contractual obligations. *Simpson v. N.C. Local Gov't Employees' Retirement System*, 88 N.C. App. 218, 224, 363 S.E.2d 90, 94, *aff'd*, 323 N.C. 362, 372 S.E.2d 559 (1988).

While I agree with the majority that determining whether a state unconstitutionally impairs the Contract Clause involves the application of a tripartite test that was elucidated by the United States Supreme Court and adopted by the *Simpson* Court, I disagree with the majority's application of this test.

Under this test, the court first ascertains whether or not a statute creates a contractual obligation. *Simpson*, 88 N.C. App. at 225, 363 S.E.2d at 94. The *Simpson* Court has already answered that question for us, and we accordingly hold that a contractual obligation exists. *Id.*; *see also Faulkenbury v. Teachers' and State Employees' Retirement System*, 108 N.C. App. 357, 424 S.E.2d 420, *aff'd per curiam*, 335 N.C. 158, 436 S.E.2d 821 (1993). Second, the court must determine if the actions of the state legislature impaired the obligation of the state's contract. *Simpson*, 88 N.C. App. at 225, 363 S.E.2d at 94. Again, *Simpson* guides us in our present holding that there is an impairment of rights "as plaintiffs stand to suffer significant reductions in their retirement allowances as a result of the legislative amendment under challenge." *Id.*

Finally, the court must determine whether the impairment was reasonable and necessary to serve an important public purpose. *Simpson*, 88 N.C. App. at 225, 363 S.E.2d at 94. In *Simpson*, the Court remanded for a "proper resolution" on this third part of the test.

In applying the third prong of the tripartite test, we are guided by the opinion in *Baltimore Teachers Union v. Mayor and City of Baltimore*, 6 F.3d 1012 (4th Cir. 1993), *cert. denied*, —— U.S. ——, 127

L.Ed.2d 435 (1994). In *Baltimore Teachers Union*, the court emphasized that the judiciary must give "at least some deference to legislative policy decisions to modify these contracts in the public interest. . . ." *Id.* at 1019. The Court explained:

> The Contract Clause, however, does not require the courts—even where public contracts have been impaired—to sit as superlegislatures . . . . Not only are we ill-equipped even to consider the evidence that would be relevant to such conflicting policy alternatives; we have no objective standards against which to assess the merit of the multitude of alternatives. . . . "Merely to enumerate the elements that have to be considered [in determining whether the public welfare decision was reasonable] shows that the place for determining their weight and their significance is the legislature, not the judiciary."

*Id.* at 1021-22 (*quoting East New York Sav. Bank v. Hahn*, 326 U.S. 230, 234, 90 L. Ed. 34, 37 (1945)).

In the present case, defendants offered an affidavit from the City's Finance Manager, Ms. Colclough, tending to show that the goal of the amending ordinance was to "protect the financial stability of the retirement plan" as well as to permit a disabled officer to continue productive employment with the City at the same salary for performing unsworn duties. Instead of losing benefits by being forced to retire early, police officers were guaranteed the right to work as long as they were physically able to perform any work for the Police Department or the City. The plaintiff has not produced any evidence to show that the amendment was unreasonable and unnecessary. Based on this record, I would find that there is a genuine issue of material fact regarding whether the amending ordinance was reasonable and necessary. Accordingly, I would reverse the trial court's granting of summary judgment and remand the case for a determination on this issue.