CHARLES B. MIRACLE, Plaintiff v. NORTH CAROLINA LOCAL GOVERNMENT
EMPLOYEES RETIREMENT SYSTEM, a corporation; BOARD OF TRUSTEES OF
THE NORTH CAROLINA LOCAL GOVERNMENT EMPLOYEES RETIREMENT
SYSTEM, a body politic and corporate; E.T. BARNES, Director of the Retirement
System Division and Deputy Treasurer for the State of North Carolina (in his
official capacity); HARLAN E. BOYLES, Treasurer of the State of North
Carolina and Chairman of the Board of Trustees of the North Carolina Local
Government Employees Retirement System (in his official capacity); and THE
STATE OF NORTH CAROLINA, Defendants

No. COA94-1241

(Filed 5 November 1996)

1. **Retirement § 10 (NCI4th)— retired law officer—retroactive statutory salary cap—impairment of contract—violation of contract clause—summary judgment improper**

   Where plaintiff law enforcement officer's retirement rights had vested and he had retired prior to the effective date of N.C.G.S. § 128-24(5)(c), which required the suspension of retirement benefits from the N.C. Local Governmental Retirement System for retirees whose postretirement earnings exceeded a specified cap, the State's action in limiting plaintiff's benefits in the manner specified in the statute impaired its contractual obligation to plaintiff. However, summary judgment on the issue of whether the application of § 128-24(5)(c) to plaintiff violated the Contract Clause of Art. I, § 10 of the U.S. Constitution was precluded where genuine issues of material fact existed as to whether the disturbance of plaintiff's benefits was "reasonable and necessary to serve an important public purpose."

   **Am Jur 2d, Summary Judgment § 27.**

   **Constitutionality, construction, and application of statute or ordinance providing for reduction of pension or retirement benefit of public officer or employee because of independent income. 7 ALR2d 692.**

   **Variations in retirement, pension, or death benefit plans as unlawful employment practice under 42 USCS § 2000e-2(a). 35 ALR Fed. 15.**

2. **Retirement § 10 (NCI4th)— retired law officer—retroactive statutory salary cap—due process—summary judgment improper**

   Summary judgment was improperly entered for defendants on a claim that the retroactive application of the statutory cap

on postretirement earnings of a law enforcement officer who retired before the effective date of the statute violated the officer's due process rights under the Fourteenth Amendment to the U.S. Constitution where a genuine issue of material fact remained on the issue of whether it was "arbitrary and irrational" for the State to apply the earnings cap to the officer.

**Am Jur 2d, Civil Rights § 287; Constitutional Law § 186; Summary Judgment § 27.**

**Supreme Court's views as to due process requirements of forfeitures. 76 L. Ed. 2d 852.**

**Retroactive application of federal legislation as violating due process clause of Federal Constitution's Fifth Amendment—Supreme Court cases. 107 L. Ed. 2d 1105.**

3. **Retirement § 10 (NCI4th)— retired law officer—retroactive statutory salary cap—Law of the Land Clause—summary judgment improper**

Summary judgment was improperly entered for defendants on a claim that the retroactive application of the statutory cap on postretirement earnings of a law enforcement officer who retired before the effective date of the statute violated the officer's rights under the Law of the Land Clause of Art. I, § 19 of the N.C. Constitution where a genuine issue of material fact remained as to the degree and reasonableness of the deprivation rendered by the statute in relation to the public good likely to result from it.

**Am Jur 2d, Constitutional Law §§ 563, 586; Summary Judgment § 27.**

**Supreme Court's views as to propriety under Federal Constitution's due process guarantees of summary administrative deprivation of property interest. 69 L. Ed. 2d 1044.**

4. **Estoppel § 13 (NCI4th)— retired local government employee—retroactive statutory salary cap—State not estopped**

Plaintiff retired law enforcement officer's allegation that the State represented that reemployment following retirement would not affect his benefits but changed this policy subsequent to his retirement by making him subject to a postretirement earnings cap in N.C.G.S. § 128-24(5)(c) did not establish an equitable

estoppel claim against the State because the representation upon which plaintiff allegedly relied was indisputably true at the time it was made and in no way constituted conduct which amounted to a false representation or concealment of a material fact.

**Am Jur 2d, Estoppel and Waiver § 133; Pensions and Retirement Funds § 123.**

**Quantum or degree of evidence necessary to prove an equitable estoppel. 4 ALR3d 361.**

Appeal by plaintiff from judgment entered 17 June 1994 by Judge D. Jack Hooks, Jr., in Onslow County Superior Court. Heard in the Court of Appeals 11 September 1995.

*Jeffrey S. Miller for plaintiff-appellant.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Alexander McC. Peters, for the State.*

JOHN, Judge.

Plaintiff appeals summary judgment entered in favor of defendants on plaintiff's constitutional claims and claim for equitable estoppel regarding termination of his retirement benefits. We affirm the trial court in part and reverse it in part.

Pertinent procedural and background information is as follows: Plaintiff began employment with Onslow County as a law enforcement officer in 1959. As such, he became a member of the Law Enforcement Officers' Benefit and Retirement Fund, later designated as the Law Enforcement Officers' Retirement System (LEO). *See* 1983 N.C. Sess. Laws ch. 468, § 1. Plaintiff retired 1 July 1985. At the time he retired, LEO, governed by N.C.G.S. § 143-166 *et seq.* (repealed 1 January 1986), permitted beneficiaries re-employed upon retirement in the private sector or in a public *non*-law enforcement field to receive full retirement benefits even upon such re-employment. *See* N.C. Admin. Code tit. 20, r. 2K.0609 (repealed 1 January 1986) (if re-employed as law enforcement officer of the State or any political subdivision thereof, retirement allowance shall cease).

On 1 January 1986, by legislative act, all members of LEO employed by or retired from local government agencies were transferred into the North Carolina Local Governmental Employees' Retirement System (LGERS), which assumed responsibility for pay-

ing retirement benefits to former members of LEO, including plaintiff. *See* 1985 N.C. Sess. Laws c. 479, § 196(t); N.C.G.S. § 143-166.50(b) (1993). Further, former members of LEO became subject to an existing LGERS earnings limitation provision imposed upon beneficiaries who retired on early or service retirement and subsequently took employment with another LGERS participating employer. *See* N.C.G.S. § 128-24(5)(c) (1995). This provision required suspension of LGERS retirement benefits of employees whose earnings exceeded a specified cap. However, former members of LEO who retired and were re-employed by a LGERS participating employer prior to 1 January 1986 were exempted from the cap. N.C.G.S. § 128-24(5a) (1995). In addition, former LEO employees who retired prior to 1 January 1986, but were not re-employed by a LGERS participating employer until after that date, were allowed a three-year phase-in period and not subjected to the earnings cap until 1 January 1989. *Id.*

Plaintiff, who retired from his law enforcement position with Onslow County 1 July 1985, accepted employment in a non-law enforcement capacity with the county, a LGERS participating employer, in April 1986. Following the statutory phase-in period, he became subject to the earnings cap of G.S. § 128-24(5)(c) on 1 January 1989.

Plaintiff filed the instant suit 6 July 1989, seeking that G.S. § 128-24(5)(c) be declared unconstitutional as applied to him, as well as temporary and permanent injunctions blocking application of the earnings cap to his retirement benefits. Defendants' 4 May 1993 motion for summary judgment was granted as to each of plaintiff's claims by the trial court 17 June 1994. Plaintiff filed notice of appeal to this Court 15 July 1994.

---

Plaintiff contends G.S. § 128-24(5)(c) operates to impair his vested contract rights to retirement benefits in contravention of Article I, § 10 of the United States Constitution and also denies him due process of the law in contravention of the Fourteenth Amendment to the federal constitution and Article I, § 19 of the state constitution. Plaintiff further asserts defendants are in any event equitably estopped from restricting said benefits by virtue of his detrimental reliance upon defendants' representations. We discuss each of plaintiff's contentions separately.

I.

**[1]** Article I, § 10 of the federal constitution (the Contract Clause) provides, *inter alia*: "No state shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." This Court has set forth a three-part test, adopted from *United States Trust Co. v. New Jersey*, 431 U.S. 1, 52 L. Ed. 2d 92, *reh'g denied*, 431 U.S. 975, 53 L. Ed. 2d 1073 (1977), to measure whether a legislative act violates the Contract Clause. *See Faulkenbury v. Teachers' & State Employees' Retirement System*, 108 N.C. App. 357, 371, 424 S.E.2d 420, 427, *aff'd per curiam*, 335 N.C. 158, 436 S.E.2d 821 (1993), and *Simpson v. N.C. Local Gov't Employees' Retirement System*, 88 N.C. App. 218, 225, 363 S.E.2d 90, 94 (1987), *aff'd per curiam*, 323 N.C. 362, 372 S.E.2d 559 (1988).

Under the test, we first must determine herein whether the state incurred a *contractual obligation* with regards to retirement benefits due plaintiff under the statutes governing LEO. *See Faulkenbury*, 108 N.C. App. at 371, 424 S.E.2d at 427. We hold a contractual relationship existed between the state and plaintiff as a retiree with vested benefits.

> [A] government retiree's pension is correctly characterized as deferred compensation to which the retiree is contractually entitled.

*Id.* at 370, 424 S.E.2d at 426. An affidavit submitted by defendants concedes that

> [a]t the time the plaintiff commenced service, he was required to render ten years of creditable membership service in order to establish his entitlement to a benefit[,]

and that "plaintiff completed ten years of service on July 1, 1969."

However, defendants insist only "those who had retired *and* returned to work on the effective date of [the earnings cap specified in] G.S. 128-24(5)(c)" could legitimately claim vested contract rights. Defendants' argument fails.

*Simpson* instructs us that:

> [a] public employee has a right to expect that the retirement rights bargained for in exchange for his loyalty and continued services, and continually promised him over many years, will not be removed or diminished. Plaintiffs . . . had a contractual right

to rely on the terms of the retirement plan as these terms existed at the moment their retirement rights became vested.

88 N.C. App. at 224, 363 S.E.2d at 94. The foregoing directive from *Simpson* was recently reaffirmed by this Court in *Hogan v. City of Winston-Salem*, 121 N.C. App. 414, 419-20, 466 S.E.2d 303, 307, *review granted*, 343 N.C. 122, 468 S.E.2d 781 (1996). Therefore, applying the interpretation of "vested" employed in *Simpson* and *Hogan*, we hold plaintiff's contractual right to his pension "vested" 1 July 1969.

While defendants point to *Griffin v. Bd. of Com'rs. of Law Officers' Retirement Fund*, 84 N.C. App. 443, 445, 352 S.E.2d 882, 884, *appeal dismissed and disc. review denied*, 319 N.C. 672, 356 S.E.2d 776 (1987); *accord, Kestler v. Bd. of Trustees of N.C. Retirement Sys.*, 48 F.3d 800 (4th Cir.), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 124 (1995), arguing it stands for the proposition that an individual's pension rights do not take effect until retirement, (a stance expressly disavowed in *Hogan, see* 121 N.C. App. at 419-20, 466 S.E.2d at 307), plaintiff in any event meets such a deadline. Plaintiff retired 1 July 1985, well before the time G.S. § 128-24(5)(c) became applicable to former LEO beneficiaries on 1 January 1986.

At this juncture, we note plaintiff has expressly limited his argument to the proposition that G.S. § 128-24(5)(c) is inapplicable to him because his retirement rights had vested *and* he had *retired* prior to the effective date of the statute. Our holding herein accordingly is limited to the argument before us. *See* N.C.R. App. P. 28(a) (scope of review is limited to questions presented in the briefs).

The *United States Trust* test directs that we next examine whether the state's action in limiting plaintiff's benefits in the manner specified in G.S. § 128-24(5)(c) *impaired* its contractual obligation to plaintiff. *See Faulkenbury*, 108 N.C. App. at 371, 424 S.E.2d at 427. Our conclusion again is in the affirmative.

Defendants, as the parties moving for summary judgment, maintained the burden in the trial court to show the absence of a genuine issue as to any material fact. *See Atkins v. Beasley*, 53 N.C. App. 33, 38, 279 S.E.2d 866, 870 (1981); *see also Simpson*, 88 N.C. App. at 226, 363 S.E.2d at 95. There was no requirement for plaintiff to come forward with evidence unless defendants "offered evidence which negate[d]" the claim of the plaintiff in its entirety. *See Mace v. Construction Corp.*, 48 N.C. App. 297, 302, 269 S.E.2d 191, 194 (1980).

In *Simpson*, this Court held the plaintiffs' contractual rights were impaired "inasmuch as plaintiffs stand to suffer significant reductions in their retirement allowances as a result of the legislative amendment under challenge." *Simpson*, 88 N.C. App. at 225, 363 S.E.2d at 94. The same may be said of plaintiff's circumstance herein. Further, the record contains no evidence of defendants having negated plaintiff's claim that application of G.S. § 128-24(5)(c) would result in forfeiture of his retirement benefits.

The final determination under the tripartite test is whether the disturbance of plaintiff's benefits under G.S. § 128-24(5)(c) was "reasonable and necessary to serve an important public purpose." *Simpson*, 88 N.C. App. at 225, 363 S.E.2d at 94 (quoting *United States Trust*, 431 U.S. at 25, 52 L. Ed. 2d at 112). When examining legislative modification of a state's own financial obligations under the Contract Clause,

> complete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State's self-interest is at stake. A governmental entity can always find a use for extra money, especially when taxes do not have to be raised. If a State could reduce its financial obligations whenever it wanted to spend the money for what it regarded as an important public purpose, the Contract Clause would provide no protection at all.

*United States Trust*, 431 U.S. at 26, 52 L. Ed. 2d at 112.

Regarding this issue, we observe initially that defendants have advanced in their appellate brief numerous bases upon which they contend that the statute in question may be deemed "reasonable and necessary." However, it is elementary that assertions of fact in a brief may not go to support a motion for summary judgment. *See Fowler v. Williamson*, 39 N.C. App. 715, 717, 251 S.E.2d 889, 890 (1979) ("Statements of fact made in briefs . . . may be assumed as true as *against* the party asserting them." (emphasis added)).

Significantly, the record lacks any showing by defendants upon which it might be determined that G.S. § 128-24(5)(c) satisfies the third prong of Contract Clause analysis as a matter of law. Moreover, such a determination would likely involve the resolution of factual disputes and therefore would be before this Court prematurely. *See Simpson*, 88 N.C. App. at 225-26, 363 S.E.2d at 95-95 ("reasonable and necessary" issue not "properly resolved in the court below," defend-

ants not having met burden "to show that there are no genuine issues as to any material fact").

In sum, summary judgment in favor of defendants on plaintiff's claim under the Contract Clause was improvidently allowed and must be reversed.

II.

[2] We next address plaintiff's alternative claim that his pension is a property right of which he has been deprived without due process of law. *See Pineman v. Oechslin*, 488 A.2d 803, 810 (Conn. 1985) ("the due process approach protects public employees from legislative confiscation of the retirement fund and arbitrary forfeiture of pension benefits").

The 14th Amendment to the United States Constitution (the Due Process Clause) guarantees that a person may not be deprived of property by the State without due process of law. Similarly, Article I, § 19 of the North Carolina Constitution (the "law of the land" clause) provides that the State may not deprive a person of his or her property except by the "law of the land."

Plaintiff contends G.S. 128-24(5)(c), "as applied to [him]," *i.e.*, an individual who retired before the statute became applicable to former LEO beneficiaries, "is irrational and arbitrary, and the trial court committed reversible error in finding it constitutional." Plaintiff asserts the statute operates retroactively to deprive him of benefits already earned.

It is undisputed that the statute has been applied to plaintiff in a retroactive manner. Retroactive legislation includes not only statutes which "take effect from a time anterior to their passage," but "all statutes, which, though operating only from their passage, affect vested rights and past transactions." *Landgraf v. USI Film Products*, 511 U.S. 244, 268-69, 128 L. Ed. 2d 229, 254 (1994) (citation omitted).

As opposed to the "reasonable *and necessary* to serve an *important* public purpose," standard, *United States Trust*, 431 U.S. at 25, 52 L. Ed. 2d at 112 (emphasis added), against which alleged violations of the Contract Clause are measured, the standard of review applied regarding due process challenges to retrospective legislation is less stringent. As the United State Supreme Court has stated,

> [w]e have never held . . . that the principles embodied in the Fifth Amendment's Due Process Clause are coextensive with prohibi-

tions existing against state impairments of pre-existing contracts. Indeed, to the extent that recent decisions of the Court have addressed the issue, we have contrasted the limitations imposed on States by the Contract Clause with the less searching standards imposed on economic legislation by the Due Process Clauses [of the Fifth and Fourteenth Amendments].

*Pension Benefit Guaranty Corp. v. Gray & Co.*, 467 U.S. 717, 733, 81 L. Ed. 2d 601, 613 (1984).

Accordingly, the due process standard of review is as follows:

[L]egislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and [] the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.

*Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15-17, 49 L. Ed. 2d 752, 766-67 (1976). Nonetheless,

[t]he retrospective aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former.

*Id.* Further, constitutional scholars have suggested that under circumstances where a legislative body attempts to modify the government's *own* obligation of contract through retroactive legislation, a heightened scrutiny of proffered justifications may be required. *See* John E. Nowak & Ronald D. Rotunda, *Constitutional Law* § 11.9, at 427 (5th ed. 1995).

Therefore, in the case *sub judice*, it must be decided whether it was "arbitrary and irrational" for the State to apply the earnings cap of G.S. § 128-24(5)(c) to plaintiff, an individual who retired *prior to* the effective date of the statute. *See Pineman v. Fallon*, 662 F. Supp. 1311, 1313 (D. Conn. 1987), *aff'd*, 842 F.2d 598 (2d Cir. 1988), *cert. denied*, 488 U.S. 824, 102 L. Ed. 2d 48 (1988) (while no due process violation found, court emphasized that "the legislature did not undertake to modify the retirement benefits of those who had already left state service by [effective date of the statute]").

As with the "reasonable and necessary" issue regarding the Contract Clause in *Simpson*, 88 N.C. App. at 225-26, 363 S.E.2d at 94-95, and in the case *sub judice*, the record before us concerning the "arbitrary and irrational" question has not been sufficiently devel-

oped to the extent that this Court might hold defendants were properly entitled to judgment as a matter of law. Indeed, the instant record is comprised in the main of counsels' vigorous disputation of plaintiff's recusal motion, discussed below, and contains only minimal reference touching upon the issue of whether "the [State] has acted in an arbitrary and irrational way," *Usery*, 428 U.S. at 15, 49 L. Ed. 2d at 766, through its retroactive application of G.S. § 128-24(5)(c) to plaintiff. The trial court's grant of summary judgment on plaintiff's federal due process claim is therefore reversed.

[3] Regarding plaintiff's state constitutional claim, although the "law of the land" clause and the Due Process Clause are similar, our Supreme Court has reserved to the courts of this state

> the right to grant relief against unreasonable and arbitrary state statutes under Article I, section 19 of the Constitution of North Carolina in circumstances under which no relief might be granted by the due process clause of the fourteenth amendment . . . . Whether a state statute violates the law of the land clause "is a question of degree and reasonableness in relation to the public good likely to result from it."

*Lowe v. Tarble*, 313 N.C. 460, 462, 329 S.E.2d 648, 650 (1985) (quoting *In re Hospital*, 282 N.C. 542, 550, 193 S.E.2d 729, 735 (1973)). The test under our state "law of the land" clause thus involves a weighing of the "degree and reasonableness" of the deprivation rendered by G.S. 128-24(5)(c) "in relation to the public good likely to result from it." *Id.* For reasons indicated earlier, we again do not believe the record herein was developed sufficiently to allow the trial court to resolve as a matter of law in defendants' favor their motion for summary judgment as to these matters, *see Simpson*, 88 N.C. App. at 225-26, 363 S.E.2d at 94-95, and therefore reverse the entry of summary judgment as to plaintiff's claim under the "law of the land" clause.

### III.

Concerning plaintiff's third claim, based upon the doctrine of equitable estoppel, however, we summarily reject his contention that the trial court's allowance of defendants' summary judgment motion was error.

> "The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is reasonably calculated to convey the impression that the facts are

otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; (3) knowledge, actual or constructive, of the real facts."

*Meachan v. Board of Education*, 47 N.C. App. 271, 277-78, 267 S.E.2d 349, 353 (1980) (quoting *Hawkins v. Finance Corp.*, 238 N.C. 174, 177-78, 77 S.E.2d 669, 672 (1953)). In addition, the elements as to the party claiming estoppel are:

"(1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudicially."

*Id.* at 278, 267 S.E.2d at 353.

[4] Regarding his claim of estoppel, plaintiff's complaint alleged defendants represented that re-employment following retirement would not affect his benefits, but changed the policy subsequent to his retirement by making him subject to G.S. § 128-24(5)(c). In addition, plaintiff's affidavit stated the representation was contained in an employee handbook, and asserted:

I relied upon the laws that existed at the time that I retired in choosing my future career. Had I known that the law was going to change I would have not retired, but rather would have continued to work. Furthermore, having chosen to work for Onslow County as I did, I had already committed myself to a course of conduct which could not easily be changed, in that it is very difficult to change careers at the age that I was.

The foregoing tender by plaintiff failed to withstand defendants' showing that an essential element of plaintiff's estoppel claim was wanting. *See Zimmerman v. Hogg & Allen*, 286 N.C. 24, 29, 209 S.E.2d 795, 798 (1974) (movant meets summary judgment burden by showing essential element of opposing party's claim nonexistent). As defendants point out, the representation upon which plaintiff allegedly relied was indisputably true at the time it was made and in no way constituted "conduct which amount[ed] to false representation or concealment of material facts." *See Fike v. Bd. of Trustees*, 53 N.C. App. 78, 279 S.E.2d 910, *disc. review denied*, 304 N.C. 194, 285

S.E.2d 98 (1981) (system estopped from denying benefits where plaintiff relied on representation in publication of system that employer would forward his benefits application to system, but employer failed to do so). The trial court therefore did not err in granting defendants' summary judgment motion as to plaintiff's equitable estoppel claim.

## IV.

Finally, plaintiff assigns as error the trial judge's refusal to grant plaintiff's recusal motion based on

> two improper *ex parte* communications between the court and defense counsel which reasonably created doubts about the court's ability to rule impartially on the defense's motion for summary judgment.

After review of the record, we find this assignment of error unfounded.

In sum, the trial court's grant of defendants' summary judgment motion as to plaintiff's claims under the Contract Clause and the Due Process Clause of the United States Constitution and the "law of the land" clause of the North Carolina Constitution is reversed. As to plaintiff's equitable estoppel claim, the entry of summary judgment is affirmed.

Affirmed in part; reversed in part and remanded.

Judges EAGLES and LEWIS concur.