Pendergraph v. N.C. Dep't of Revenue, 2011 NCBC 8.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
09 CVS 19607

JAMES W. PENDERGRAPH, on behalf of )
himself and all others similarly situated, and )
TERESA C. ROGERS, on behalf of herself )
and all others similarly situated, )
          Plaintiffs-Petitioners )
           )
          v. )
           )
NORTH CAROLINA DEPARTMENT OF )
REVENUE, KENNETH R. LAY, Secretary of )
The North Carolina Department of Revenue )
(in his official capacity), NORTH CAROLINA )
DEPARTMENT OF STATE TREASURER, )
JANET COWELL, Treasurer of the State of )
North Carolina (in her official capacity), and )
THE STATE OF NORTH CAROLINA, )
          Defendants-Respondents )

**OPINION AND ORDER
ON DEFENDANTS'
MOTION TO DISMISS**

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."); and assigned to the undersigned Chief Special Superior Court Judge for Complex Business Cases, now comes before the court upon Defendants' Motion to Dismiss Class Action Complaint and Petition for Judicial Review (the "Motion"), pursuant to Rule 12(b)(6), North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT after considering the arguments, briefs, other submissions of counsel and appropriate matters of record, as discussed *infra*, CONCLUDES that the Defendants' Motion should be GRANTED.

*Schiller & Schiller, PLLC by Marvin Schiller, Esq. and David G. Schiller, Esq. for Plaintiffs.*
*Attorney General Roy Copper, Esq. by Special Deputy Attorney General Kay Linn Miller Hobart, Esq. and Assistant Attorney General Robert M. Curran, Esq. for Defendants.*

Jolly, Judge.

## I.

## PROCEDURAL HISTORY

[1]     On September 24, 2009, Plaintiffs James W. Pendergraph ("Pendergraph") and Teresa C. Rogers ("Rogers") filed a Complaint on behalf of themselves and all others similarly situated against Defendants North Carolina Department of Revenue ("Department of Revenue"); Kenneth R. Lay[1], Secretary of the Department of Revenue; North Carolina Department of State Treasurer ("Department of State Treasurer"); Janet Cowell, Treasurer of the State of North Carolina ("Treasurer") and the State of North Carolina ("State").  The Complaint alleges claims for relief ("Claim(s)") in three counts: First Count – Violation of the Impairment of Contract Clause, U.S. Constitution, Article I, Section 10, Clause 1; Second Count – Violation of the Due Process Clauses, U.S. Constitution, Amendments V and XIV and Third Count – Violation of the North Carolina Constitution, Article 1, Sections 1 and 19.

[2]     The court has heard oral argument on the Motion and it is ripe for determination.

## II.

## FACTUAL BACKGROUND

Among other things, the Complaint alleges that:

---

[1] In late October 2010, David W. Hoyle became the new Secretary of the Department of Revenue.  The court, upon its own Motion, and pursuant to Rule 25(d), joins David W. Hoyle as a party to this action.

[3]     Pendergraph is a disabled firefighter who began employment with the City of High Point, North Carolina in 1985.  He retired in 2003.[2]

[4]     Rogers is a disabled teacher who began employment with the New Hanover County, North Carolina Public School System in 1986.  She retired in 2007.[3]

[5]     Pendergraph and Class A Members[4] are members of the Local Governmental Employees' Retirement System ("LGERS"), one of several public employee retirement systems established by the General Assembly in G.S. 128-25.[5]

[6]     Rogers and Class B Members[6] are members of the Teachers' and State Employees' Retirement System ("TSERS"), another retirement system established under G.S. 135-3.[7]

[7]     At the time Pendergraph and Rogers began their state employment in 1985 and 1986, respectively, state and local retirement benefits were statutorily exempt from North Carolina state income tax under G.S. 128-31 (LGERS) (1986) and G.S. 135-9 (TSERS) (1988).[8]

[8]     Effective August 12, 1989, the General Assembly repealed the tax exemption on retirement benefits under G.S. 128-31 and 135-9, and replaced it with G.S. 105-134.6(b)(6) (the "Act"), which subjected all state, local and federal retirement benefits above $4,000 to North Carolina state income tax.

---

[2] Compl. ¶ 7.
[3] *Id.*
[4] Class A consists of all persons who began membership in LGERS during the period of August 12, 1984, through August 11, 1989, who received (or will receive) LGERS retirement benefits which were (or will be) subjected to the North Carolina state income tax under G.S. 128-31 and/or G.S. 105-134.6, and who paid or would be required to pay North Carolina state income tax on their LGERS retirement benefits.
[5] *Id.* ¶ 9.
[6] Class B consists of all persons who began membership in TSERS during the period of August 12, 1984, through August 11, 1989, who received (or will receive) TSERS retirement benefits which were (or will be) subjected to North Carolina state income tax under G.S. 135-9 and/or G.S. 105-134.6, and who paid or would be required to pay North Carolina state income tax on their TSERS retirement benefits.
[7] *Id.* ¶ 10.
[8] *Id.* ¶¶ 17, 20.

[9] In 1990, after five years with the High Point Fire Department, Pendergraph's retirement benefits in LGERS became vested.[9]

[10] In 1991, after five years with the New Hanover County School System, Rogers' retirement benefits in TSERS became vested.[10]

[11] Since 2005, Pendergraph's retirement income above $4,000 has been taxed by the Department of Revenue.[11]

[12] Since 2007, Rogers' retirement income above $4,000 has been taxed by the Department of Revenue.[12]

[13] Plaintiffs dispute the constitutionality of the Act and contend their North Carolina retirement benefits should not be subject to North Carolina state income tax.

III.

APPLICABLE LAW

[14] Dismissal of an action pursuant to Rule 12(b)(6) is appropriate when the complaint fails to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion, the well-pleaded allegations of the complaint are taken as true and admitted, but conclusions of law or unwarranted deductions of facts are not admitted. *Sutton v. Duke*, 277 N.C. 94, 98 (1970).

[15] A complaint fails to state a claim upon which relief can be granted when either (a) the complaint on its face reveals that no law supports the plaintiff's claim, (b) the complaint on its face reveals the absence of facts sufficient to make a good claim or

---

[9] *Id.* ¶ 18.
[10] *Id.* ¶ 21.
[11] *Id.* ¶ 19.
[12] *Id.* ¶ 22.

(c) some fact disclosed in the complaint necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986).

## IV.

## PARTIES' CONTENTIONS

[16]    Defendants argue that Plaintiffs' Complaint should be dismissed because Plaintiffs were not vested in LGERS and TSERS on August 12, 1989, the date when the General Assembly enacted the Act.[13]   They contend that the Act appropriately subjected to state income tax any future state, local and federal retirement benefits of those North Carolina employees whose benefits in either LGERS or TSERS had not vested at the time the Act became effective.

[17]    Defendants also contend that Plaintiffs' Claims as to the Department of State Treasurer and the Treasurer must be dismissed because they are barred by sovereign immunity.[14]

[18]    Plaintiffs respond that a contractual relationship was formed between themselves and the State when Plaintiffs began their employment; and therefore, the State's post-hiring attempt to change the taxability terms of Plaintiffs' retirement benefits is an unconstitutional impairment of contract and deprivation of property without due process of law.[15]

[19]    Plaintiffs also argue that the Department of State Treasurer and the Treasurer are proper properties as they are named for the purpose of injunctive relief only.[16]

---

[13] Defs.' Br. Supp. Mot. Dis. 5.
[14] *Id.* 6-7.
[15] Pls.' Br. Resp. Defs.' Mot. Dis. 9, 12-14.
[16] *Id.* 21.

V.

DISCUSSION

[20]    The Contract Clause of the United States Constitution provides, *inter alia*, "No state shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ."  North Carolina courts have set forth a three-part test, adopted from *United States Trust Co. v. New Jersey*, 431 U.S. 1 (1977), to measure whether a legislative act violates the Contract Clause.  *Miracle v. N.C. Local Gov't Employees Ret. Sys.*, 124 N.C. App. 285, 289 (1996).  In order to determine the constitutionality of the Act, the court must first determine whether there was a contract between Plaintiffs and the State.  *Id.*

[21]    The issue before the court is not one of first impression.  In *Bailey v. North Carolina*, 348 N.C. 130 (1998), the North Carolina Supreme Court held that the relationship between state and local retirement systems and employees whose state retirement benefits were vested as of August 12, 1989 (the "*Bailey* Date") was contractual in nature.[17]  Therefore, vested employees had an enforceable contractual right to tax exempt retirement benefits, and the Act unconstitutionally impaired this contractual right.  *Id.* at 153.  In *Bailey*, the court relied on *Simpson v. N.C. Local Gov't Employees' Ret. Sys.*, 88 N.C. App. 218 (1987).  The Court of Appeals in *Simpson* reasoned that vested retirement benefits are presently-earned but deferred compensation to which employees have a contractual right.  88 N.C. App. at 223-24 ("Plaintiffs . . . had a contractual right to rely on the terms of the retirement plan as these terms existed at the moment their retirement rights became vested.").

---

[17] The plaintiffs in *Bailey* were North Carolina state and local government employees whose retirement benefits had vested on or before the *Bailey* Date.

[22] Subsequent courts have reaffirmed *Simpson*'s holding that employees who are vested in the retirement system have a contractual right in their retirement benefits. *See Faulkenbury v. Teachers' and State Employees' Ret. Sys.*, 345 N.C. 683 (1997) (vested Plaintiffs had contractual right to disability retirement benefits); *Miracle v. N.C. Local Gov't Employees Ret. Sys.*, 124 N.C. App. 285, *disc. rev. denied,* 345 N.C. 754 (1997) (pension terms at time of plaintiff's vesting deemed contractual); *Woodard v. N.C. Local Gov't Employees' Ret. Sys.*, 108 N.C. App. 378, *aff'd per curiam*, 335 N.C. 161 (1993) (amendment of disability benefits impaired member's contract).

[23] It is important to note that the holdings in *Simpson* and its progeny are based on the protection of vested rights. *See Bailey*, 348 N.C. at 146. It is well settled in North Carolina that employees whose rights in the retirement system have vested have a relationship with the State that is contractual, and absent an important interest that is reasonable and necessary, the State cannot impair this right. *See Simpson*, 88 N.C. App. at 224; *see also United States Trust Co.*, 431 U.S. at 25-26.

[24] The facts of this case are materially distinguishable from the cases cited above in that Plaintiffs were not vested members of their respective retirement systems on the *Bailey* date. Pendergraph vested in LGERS in 1990, and Rogers vested in TSERS in 1991, both after the *Bailey* date.

[25] Because Plaintiffs became vested in their respective retirement systems after the *Bailey* date, there did not exist an enforceable contractual relationship between Plaintiffs and the State when the General Assembly changed the terms of their retirement benefits. The contract between Plaintiffs and the State was formed when Plaintiffs became vested, five years after they each began employment. *Tripp v. City of*

*Winston-Salem*, 188 N.C. App. 577, 583 (2008); *see also Schimmeck v. City of Winston-Salem*, 130 N.C. App. 471, 473 (1998) ("In the context of retirement benefits, a contractual obligation exists once the employee's rights have vested."); *Whisnat v. Teachers' and State Employees' Ret. Sys. of North Carolina*, 191 N.C. App. 233, 236 (2008) ("It is clear to this Court that the terms of the contract are established at the time the benefits vest, *i.e.*, five years after [plaintiff] began employment.").

[26]     Plaintiffs' argument that a contract was formed when Plaintiffs began their employment, while interesting, is contrary to well established precedent in this State. Plaintiffs contend the retirement plans in place at the time Plaintiffs began employment are unilateral contracts that do not require vesting as a precondition.[18]  They argue that the Court of Appeals in *Whisnat* misinterpreted *Faulkenbury* when it held that a contract between an employee and the State is established when the benefits vest.[19]

[27]     Plaintiffs' arguments cannot withstand North Carolina legal precedent. The North Carolina Supreme Court's decision in *Faulkenbury*, upon which Plaintiffs rely, states that "when the General Assembly enacted laws which provided for certain benefits to those persons who were to be employed by state and local governments and who fulfilled certain conditions, this could reasonably be considered by those persons as offers . . . to guarantee the benefits if those persons fulfilled the conditions."  345 N.C. at 691.  The court went on to state that when plaintiffs fulfilled those conditions, the contract was formed.  *Id.*

[28]     One of the conditions the court in *Faulkenbury* was referring to is vesting. *Id.* at 692.  Plaintiffs had a contractual right to rely on the terms of their retirement plans

---

[18] *Id.* 14.
[19] *Id.* 18-19.

"as these existed at the moment their retirement rights became vested." *Bailey*, 348 N.C. at 141. Plaintiffs' respective retirement rights in the instant case became vested in 1990 and 1991, after the *Bailey* date. Prior to the vesting dates, Plaintiffs could not have relied on the terms of their retirement plans. *Cashwell v. Dept. of State Treasurer*, 196 N.C. App. 80, 89 (2009). "The state may change the terms of state retirement plans and those changes are binding on state employees who have not yet vested in the retirement system." *Id.*

[29]    Here, the General Assembly changed the terms of Plaintiffs' retirement plans on August 12, 1989, prior to the dates Plaintiffs became vested. These changes became binding on Plaintiffs. Plaintiffs did not have a contractual right to rely on the terms of their retirement plans prior to their vesting dates.

[30]    The court is not persuaded by Plaintiffs' argument that the General Assembly cannot change the terms of Plaintiffs' retirement plans because it did not expressly reserve the right to amend the plans in the statutes. The Supreme Court in *Faulkenbury* concluded that the proper analysis was not whether the General Assembly had reserved the right to amend the retirement plans, but whether a contract had been formed and whether the employee's contractual rights had been impaired by the State. 345 N.C. at 691. As explained above, there was no contractual relationship between Plaintiffs and the State on the date the General Assembly changed the terms of Plaintiffs' retirement plans; therefore, the General Assembly did not need to reserve the right to amend Plaintiffs' retirement plans.

[31]    On the *Bailey* date, August 12, 1989, Plaintiffs were not vested in the retirement system, and therefore are not entitled to tax-free retirement benefits.

Accordingly, the court CONCLUDES that Plaintiffs have failed to state a claim for violation of the Contract Clause of the U.S. Constitution.

[32] Because Plaintiffs were not vested on or before the *Bailey* date, and there was not a contractual obligation, the court further CONCLUDES that Plaintiffs have failed to state claims for due process violations under both the U.S. and North Carolina Constitution.

[33] Accordingly, Defendants' Motion should be GRANTED. [20]

NOW THEREFORE, based upon the foregoing CONCLUSIONS, it hereby is ORDERED, ADJUDGED and DECREED that:

[34] Defendants' Motion to Dismiss Class Action Complaint and Petition for Judicial Review is GRANTED.

[35] This civil action is DISMISSED.

[36] Costs shall be charged to Plaintiffs.

This the 8th day of March, 2011.

---

[20] Because Plaintiffs fail to state a claim upon which relief can be granted, it is not necessary for the court to decide whether Plaintiffs' Claims against the Department of State Treasurer and the Treasurer are barred by sovereign immunity.