IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-979

Filed: 15 August 2017

Catawba County, No. 15 CVS 664

RICHARD HOWSE and MARY B. REED, Plaintiffs,

v.

BANK OF AMERICA, N.A. and FEDERAL NATIONAL MORTGAGE ASSOCIATION, Defendants.

Appeal by Plaintiffs from order entered 5 May 2016 by Judge Gregory R. Hayes in Superior Court, Catawba County. Heard in the Court of Appeals 6 March 2017.

*Thurman, Wilson, Boutwell & Galvin, P.A., by James P. Galvin, for Plaintiffs-Appellants.*

*McGuire Woods, LLP, by Nathan J. Taylor, for Defendants-Appellees.*

McGEE, Chief Judge.

Richard Howse and Mary B. Reed ("Plaintiffs") appeal from the trial court's 5 May 2016 order granting Bank of America, N.A.'s ("Bank of America") and Federal National Mortgage Association's ("Fannie Mae") (collectively, "Defendants") motion for summary judgment, and denying Plaintiffs' motion to compel. We affirm in part, reverse and remand in part.

I. Background

Plaintiffs executed a promissory note ("the Note") in the principal amount of $376,000.00, made payable to Bank of America, on 16 July 2008. The Note was

secured by a deed of trust (the "Deed of Trust") executed by Plaintiffs on 16 July 2008 on real property located at 6965 Navahjo [sic] Trail, Sherrills Ford, North Carolina 28673 ("the Property"). Bank of America was named as the lender in the Deed of Trust. The terms of the Deed of Trust allowed "[t]he Note or a partial interest in the Note . . . [to] be sold one or more times without prior notice to [Plaintiffs]." The Deed of Trust also provided that Plaintiffs would be given written notice of a change in loan servicer.

Bank of America sold the Note to Fannie Mae on 1 August 2008, but Bank of America remained the loan servicer. Bank of America remained the loan servicer throughout the life of the loan. Bank of America "was authorized by Fannie Mae to make determinations with respect [to] borrower eligibility for loan modification programs offered by Fannie Mae."

Plaintiffs defaulted on the Note in November 2009. After defaulting, Plaintiffs contacted Bank of America on several occasions regarding the Note. Plaintiffs delivered a letter of hardship, along with certain financial statements, to Bank of America on or about 8 April 2010. On or about 28 June 2010, Plaintiffs told Bank of America that the Property was a vacation rental property and, therefore, the Property was not eligible for Fannie Mae's "Making Home Affordable" Program. Plaintiffs again sent correspondence to Bank of America inquiring about the Note and Deed of

Trust on 12 March 2012. Bank of America notified Plaintiffs by letter on 4 June 2012 that "[t]he current owner of the [N]ote is [Fannie Mae]."[1]

On 8 August 2012, Bank of America commenced a foreclosure by power of sale proceeding by filing a notice of hearing before the Clerk of Superior Court for Catawba County ("the Clerk"). The Clerk entered an order on 8 November 2012 finding that "the [Note] is now in default and the instrument securing said debt gives the note holder the right to foreclose under a power of sale." The order further provided that a foreclosure sale could proceed on the Deed of Trust (the "Order for Sale"). Plaintiffs appealed the Order for Sale to the superior court on 11 November 2012.

While Plaintiffs' appeal to the superior court was pending, Bank of America repurchased the Note from Fannie Mae on 7 January 2013. After repurchasing the Note, Bank of America sent Plaintiffs a letter on 22 March 2013 to determine whether Plaintiffs qualified for a loan modification. Bank of America did not receive a response from Plaintiffs.

The superior court entered an order on 12 June 2013 affirming the Order for Sale entered by the Clerk. In the orders of the Clerk and the trial court, Bank of America was found to be the holder of the Note. Plaintiffs appealed the trial court's order affirming the Clerk's Order for Sale to this Court, and we affirmed the trial

---

[1] Some facts described herein originate from Plaintiffs' complaint. Because this case is before this Court on an appeal from the trial court's grant of summary judgment in favor of Defendants, we consider all facts in the light most favorable to Plaintiffs, the non-moving parties. *See Leake v. Sunbelt Ltd. of Raleigh*, 93 N.C. App. 199, 202, 377 S.E.2d 285, 287 (1989).

court's order in an opinion entered 15 April 2014. *See In re Foreclosure of a Deed of Trust Executed by Reed*, 233 N.C. App. 598, 758 S.E.2d 902, 2014 N.C. App. LEXIS 381 (2014) (unpublished) (hereinafter "*Foreclosure of Reed*"). This Court held that

> the [Deed of Trust] contains a description of the land sufficient to identify the subject property. Further, the record contains competent evidence for us to conclude that [Bank of America] was the current holder of a valid debt. Accordingly, the trial court did not err in ordering [Bank of America] to proceed with the foreclosure pursuant to N.C. Gen. Stat. § 45-21.16[.]

*Id.* at *10.

Subsequent to this Court's decision in *Foreclosure of Reed*, Plaintiffs initiated the present lawsuit by filing a complaint for declaratory judgment and other relief on 16 March 2015. In their complaint, Plaintiffs alleged, *inter alia*, that Defendants breached the covenants of good faith and fair dealing by their "conduct of concealment and misrepresentation[,]" and by their negligent misrepresentation of material facts that Plaintiffs relied upon to their detriment. Plaintiffs requested a declaratory judgment that North Carolina's foreclosure by power of sale statute, N.C. Gen. Stat. § 45-21.16(d), was unconstitutional as applied to them. Plaintiffs requested an accounting "of all funds to be applied to the Note;" and requested "declaratory relief . . . pursuant to . . . the Uniform Declaratory Judgments Act[, N.C. Gen. Stat. § 1-253 *et seq*,] for the declaration that none of the Defendants have any legal or equitable rights in the Note or Deed of Trust, including for purposes of foreclosure[.]" The complaint requested the court, "[p]ursuant to N.C.G.S. § 45-21.34 and § 1-485,"

issue "a preliminary injunction barring any sale, conveyance, or foreclosure of the Property pending the full disposition of" Plaintiffs' lawsuit.

Defendants filed a motion to dismiss Plaintiffs' complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) on 12 June 2015. The trial court denied Defendants' motion by order entered 11 August 2015. Defendants served their answer and affirmative defenses to Plaintiffs' complaint on 28 August 2015. While the discovery process was ongoing, Defendants filed a motion for summary judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule 56 on 1 April 2016. Plaintiffs filed a motion to compel on 18 April 2016, arguing that Defendants had failed to answer interrogatories and produce documents requested in the discovery process.

A hearing was held on 2 May 2016 on Defendants' motion for summary judgment and Plaintiffs' motion to compel. Plaintiffs argued they were unable to procure evidence in support of their claims due to Defendants' failure to answer their discovery requests. Following the hearing, the trial court held that Plaintiffs' complaint "contain[ed] a collateral attack on a valid judgment; that there [was] no genuine issue of material fact and that Defendants [were] entitled to judgment as a matter of law." Accordingly, the trial court granted Defendants' motion for summary judgment and denied Plaintiffs' motion to compel. Plaintiffs appeal.

II. <u>Analysis</u>

The central question on appeal concerns whether the present lawsuit is, as the trial court found, a "collateral attack" on the foreclosure by power of sale proceeding this Court upheld as valid in *Foreclosure of Reed*. In addition to arguing that the present lawsuit is not a collateral attack and the trial court erred in so finding, Plaintiffs also argue the trial court erred in granting Defendants' motion for summary judgment while Plaintiffs' motion to compel discovery was still pending.

A. Collateral Attack on a Valid Judgment; N.C. Gen. Stat. § 45-21.34

Plaintiffs argue the trial court erred in granting summary judgment to Defendants on the grounds that their lawsuit was an impermissible collateral attack on an otherwise valid judgment. Summary judgment has been described by this Court as a "drastic remedy," the purpose of which is to "save time and money for litigants in those instances where there is no dispute as to any material fact." *Leake*, 93 N.C. App. at 201, 377 S.E.2d at 286 (citing *Dendy v. Watkins*, 288 N.C. 447, 219 S.E. 2d 214 (1975)). On appeal, "we review summary judgments to determine if there was a genuine issue as to any material fact and whether the movant is entitled to judgment as a matter of law." *MacFadden v. Louf*, 182 N.C. App. 745, 746, 643 S.E.2d 432, 433 (2007). The standard of review for summary judgment is *de novo*. *Builders Mut. Ins. Co. v. North Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006).

A collateral attack "is one in which a plaintiff is not entitled to the relief demanded in the complaint unless the judgment in another action is adjudicated

invalid." *Thrasher v. Thrasher*, 4 N.C. App. 534, 540, 167 S.E.2d 549, 553 (1969) (quotation marks and citation omitted); *see also Regional Acceptance Corp. v. Old Republic Surety Co.*, 156 N.C. App. 680, 682, 577 S.E.2d 391, 392 (2003) ("A collateral attack on a judicial proceeding is an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it." (internal quotation marks omitted)).

We find the present lawsuit, to the extent that Plaintiffs seek relief pursuant to the North Carolina Uniform Declaratory Judgments Act, N.C. Gen. Stat. § 1-253 *et seq* ("UDJA"), to be an impermissible collateral attack. In the foreclosure by power of sale proceeding, the Clerk "entered an order authorizing [Bank of America] to foreclose on [the Property] pursuant to N.C. Gen. Stat. § 45-21.16." *Foreclosure of Reed*, 2014 N.C. App. LEXIS 381, at *2. Plaintiffs appealed to the trial court and, after the trial court denied Plaintiffs' appeal, this Court held "the trial court did not err in ordering [Bank of America] to proceed with the foreclosure pursuant to N.C. Gen. Stat. § 45-21.16[.]" *Id.* at *10.

The UDJA is a statutory scheme wholly separate from the statutory procedure for foreclosure by power of sale provided by N.C.G.S. § 45-21.16 *et seq*, and any relief potentially available under the UDJA would require the "judgment in another action" – the foreclosure by power of sale action in this matter in which this Court held that the trial court did not err in ordering Bank of America to proceed with the foreclosure

– to be "adjudicated invalid." *Thrasher*, 4 N.C. App. at 540, 167 S.E.2d at 553. Therefore, any relief pursuant to the UDJA would constitute an impermissible collateral attack. This conclusion, however, does not end our analysis. While Plaintiffs' complaint in the present case primarily sought relief under the UDJA, Plaintiffs also sought relief pursuant to N.C.G.S. § 45-21.34. As explained below, we find that the trial court erred in granting Defendants' motion for summary judgment on Plaintiffs' equitable claims made pursuant to N.C.G.S. § 45-21.34.

"There are two methods of foreclosure possible in North Carolina: foreclosure by action and foreclosure by power of sale." *Phil Mechanic Construction Co. v. Haywood*, 72 N.C. App. 318, 321, 325 S.E.2d 1, 3 (1985) (citation omitted). In foreclosure by power of sale proceedings, such as the one undertaken by Defendants on the Property which was the subject of our decision in *Foreclosure of Reed*, the clerk of superior court "is limited to making the six findings of fact specified" in N.C.G.S. § 45-21.16(d):

> (1) the existence of a valid debt of which the party seeking to foreclose is the holder; (2) the existence of default; (3) the trustee's right to foreclose under the instrument; (4) the sufficiency of notice of hearing to the record owners of the property; (5) the sufficiency of pre-foreclosure notice under [N.C. Gen. Stat. § 45-102] and the lapse of the periods of time established by Article 11, if the debt is a home loan as defined under [N.C. Gen. Stat. § 45-101(1b)]; and (6) the sale is not barred by [N.C. Gen. Stat. § 45-21.12A].

*In re Young*, 227 N.C. App. 502, 505-06, 744 S.E.2d 476, 479 (2013) (citations and quotation marks omitted). While the clerk's findings of fact "are appealable to the

superior court for a hearing *de novo*," the superior court's authority in reviewing the clerk's findings "is similarly limited to determining whether the six criteria of N.C. Gen. Stat. § 45-21.16(d) have been satisfied." *Id.* In a *de novo* appeal to the superior court in a N.C.G.S. § 45-21.16 foreclosure by power of sale proceeding, "the trial court must decline to address any party's argument for equitable relief, as such an action would exceed the superior court's permissible scope of review." *Id.* (citations, brackets and quotation marks omitted); *see also In re Foreclosure of Goforth Properties, Inc.*, 334 N.C. 369, 374-75, 432 S.E.2d 855, 859 (1993) ("Equitable defenses to foreclosure . . . may not be raised in a hearing pursuant to [N.C.G.S.] § 45-21.16 or on appeal therefrom[.]").

While equitable defenses to foreclosure are not available in a N.C.G.S. § 45-21.16 proceeding, "equitable defenses to foreclosure may be raised in a separate action to enjoin the foreclosure prior to the time the rights of the parties become fixed." *Funderburk v. JPMorgan Chase Bank, N.A.*, 241 N.C. App. 415, 423, 775 S.E.2d 1, 6 (2015). "The proper method for invoking equitable jurisdiction to enjoin a foreclosure sale is by bringing an action in the Superior Court pursuant to [N.C.]G.S. [§] 45-21.34." *In re Watts*, 38 N.C. App. 90, 94, 247 S.E.2d 427, 429 (1978). N.C.G.S. § 45-21.34 provides, in relevant part,

> Any owner of real estate, or other person, firm or corporation having a legal or equitable interest therein, may apply to a judge of the superior court, prior to the time that the rights of the parties to the sale or resale becoming

> fixed pursuant to G.S. 45-21.29A *to enjoin such sale, upon . . . any . . . legal or equitable ground which the court may deem sufficient*: Provided, that the court or judge enjoining such sale, whether by a temporary restraining order or injunction to the hearing, shall, as a condition precedent, require of the plaintiff or applicant such bond or deposit as may be necessary to indemnify and save harmless the mortgagee, trustee, cestui que trust, or other person enjoined and affected thereby against costs, depreciation, interest and other damages, if any, which may result from the granting of such order or injunction: Provided further, that in other respects the procedure shall be as is now prescribed by law in cases of injunction and receivership, with the right of appeal to the appellate division from any such order or injunction.

N.C. Gen. Stat. § 45-21.34 (2015) (emphasis added).

In the present case, Defendants sought foreclosure on the Property through foreclosure by power of sale. The Clerk found the six prerequisites required for foreclosure as specified in N.C.G.S. § 45-21.16 to be present, and ordered that the foreclosure proceed. The Clerk's findings were upheld both on appeal to the superior court and this Court. *Foreclosure of Reed*, 2014 N.C. App. LEXIS 381, at *2-3. However, none of those proceedings – before the Clerk, the superior court, or this Court – dealt with any equitable defenses to foreclosure. This was not through any failure of Plaintiffs, but rather was by design: Plaintiffs were barred by our precedents from raising equitable defenses to foreclosure in the context of a N.C.G.S. § 45-21.16 foreclosure by power of sale proceeding. *E.g. In re Young*, 227 N.C. App. at 505-06, 744 S.E.2d at 479 ("the trial court must decline to address any party's

argument for equitable relief, as such an action would exceed the superior court's permissible scope of review." (citations, brackets and quotation marks omitted)).

It is clear that equitable defenses to foreclosure may only be considered through a proceeding pursuant to N.C.G.S. § 45-21.34. Such an action is not a collateral proceeding attacking a valid judgment, but is rather a statutorily-created method by which "[a]ny owner of real estate, or other person, firm or corporation having a legal or equitable interest therein" may present equitable defenses to foreclosure when the foreclosure proceeding does not otherwise contain a mechanism for those defenses to be considered.

In addition to presenting claims under the UDJA, Plaintiffs' complaint in the present case requested injunctive relief "[p]ursuant to N.C.G.S. § 45-21.34," and asked the trial court to "issue a preliminary injunction barring any sale, conveyance, or foreclosure of the Property pending the full disposition of" the present lawsuit. We hold that Plaintiffs' invocation of N.C.G.S. § 45-21.34 was an "appl[ication] to a judge of the superior court" and was sufficient to raise Plaintiffs' equitable claims as to why the trial court should "enjoin such [foreclosure] sale." N.C.G.S. § 45-21.34. Therefore, Plaintiffs' equitable claims were proper under N.C.G.S. § 45-21.34, and the trial court erred in granting summary judgment to Defendants as to those claims.

As this Court has held, an equitable action pursuant to N.C.G.S. § 45-21.34 must be commenced "prior to the time the rights of the parties become fixed."

*Funderburk*, 241 N.C. App. at 423, 775 S.E.2d at 6. In the present case, it appears Plaintiffs filed the present lawsuit after this Court issued its decision in *Foreclosure of Reed*, but before a foreclosure sale had occurred, as Plaintiffs' complaint requested the trial court enjoin any sale of the Property during the pendency of the present lawsuit. The rights of parties in a foreclosure by power of sale proceeding become fixed if an upset bid "is not filed following a sale, resale, or prior upset bid" within ten days. *See* N.C. Gen. Stat. §§ 45-21.27; 45-21.29A (2015). On the record before us, it appears that the Property has not been sold in a foreclosure sale and, thus, the rights of the parties have not become fixed. On remand, the trial court should ensure that the rights of the parties have not become fixed before proceeding with an equitable action pursuant to N.C.G.S. § 45-21.34.

## B. Motion to Compel

Plaintiffs also argue the trial court erred by granting summary judgment while discovery was not yet completed and while Plaintiffs' motion to compel was still pending. "Whether or not the party's motion to compel discovery should be granted or denied is within the trial court's sound discretion and will not be reversed absent an abuse of discretion." *Wagoner v. Elkin City Schools' Bd. of Education*, 113 N.C. App. 579, 585, 440 S.E.2d 119, 123, *disc. review denied*, 336 N.C. 615, 447 S.E.2d 414 (1994).

As our Supreme Court has held, "[o]rdinarily it is error for a court to hear and rule on a motion for summary judgment when discovery procedures, which might lead to the production of evidence relevant to the motion, are still pending and the party seeking discovery has not been dilatory in doing so." *Conover v. Newton*, 297 N.C. 506, 512, 256 S.E.2d 216, 220 (1979). This general rule is not absolute, and this Court has upheld awards of summary judgment when a motion to compel was pending where, for instance, summary judgment was properly granted on sovereign immunity grounds. *See Patrick v. Wake Cty. Dep't of Human Servs.*, 188 N.C. App. 592, 597-98, 655 S.E.2d 920, 924 (2008); *see also N.C. Council of Churches v. State of North Carolina*, 120 N.C. App. 84, 92, 461 S.E.2d 354, 360 (1995) ("A trial court is not barred in every case from granting summary judgment before discovery is completed." (citations omitted)).

In the present case, though, it appears from the face of the trial court's order that it denied Plaintiffs' motion to compel *because* it had determined that Defendants' motion for summary judgment should be granted on the theory that Plaintiffs' entire lawsuit was an impermissible collateral attack. The trial court's order stated that "after considering the submissions and arguments of the parties," it determined that Plaintiffs' complaint "contain[ed] a collateral attack on a valid judgment" and therefore ordered that "Defendants' [m]otion for [s]ummary [j]udgment [was]

granted" and "further ordered" that "Plaintiff's [m]otion to [c]ompel [was] denied." (all caps omitted).

In light of our determination that the trial court erred in granting Defendants' motion for summary judgment as to Plaintiffs' claims pursuant to N.C.G.S. § 45-21.34, and the fact that no other reason for the trial court's denial of Plaintiffs' motion to compel discovery appears on the face of the order, we find the trial court abused its discretion in denying Plaintiffs' motion to compel.

The dissent cites the well-settled principle of North Carolina law which states that a trial court's ruling on a motion for summary judgment should be upheld upon "any theory of law" and should not be set aside "merely because the court gave a wrong or insufficient reason for it." *Templeton v. Town of Boone*, 208 N.C. App. 50, 54, 701 S.E.2d 709, 712 (2010) (citation omitted). The dissent then discusses Plaintiffs' claims for relief and how, in the dissent's view, those claims cannot be sustained.

The dissent's analysis is surely thoughtful, and may – on remand and after consideration of Plaintiffs' motion to compel – be found to be meritorious. But it is clear reviewing the transcript of the hearing that the trial court believed Plaintiffs' entire lawsuit to be a collateral attack, which obviated the need for it to consider whether information useful to Plaintiffs' claims could be had with more discovery. When giving its oral ruling on Defendants' motion for summary judgement, the trial

court stated that "having reviewed the file and having heard the argument of the attorneys, . . . I think [Plaintiffs' lawsuit is] a collateral attack on the foreclosure and therefore I'm going to grant the Defendants' Motion for Summary Judgment and deny Plaintiffs' Motion to Compel." As noted, this Court has previously stated that "[o]rdinarily it is error" for a trial court to rule on a motion for summary judgment "when discovery procedures, which might lead to the production of evidence relevant to the motion, are still pending." *Evans v. Appert*, 91 N.C. App. 362, 367, 372 S.E.2d 94, 97 (1988).

Once a party moving for summary judgment has shown that "(1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) the moving party is entitled to judgment as a matter of law," the burden then "shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 138 N.C. App. 778, 784-85, 534 S.E.2d 660, 664 (2000) (citations omitted).[2] In the present case, Plaintiffs had no opportunity to make that showing, as discovery had not been completed and the trial court did not allow

---

[2] Prior to moving for summary judgment, Defendants moved to dismiss Plaintiffs' complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), contending the complaint "fail[ed] to allege any facts supporting a  claim for relief" and that the complaint "[was] barred by the doctrines of collateral estoppel and res judicata and the statute of limitations." After a hearing, the trial court denied Defendants' motion, and Defendants did not appeal that ruling to this Court.

Plaintiffs to "produce a forecast of evidence . . . showing that he can at least establish a *prima facie* case at trial." *Id.* Once the trial court determined that Plaintiffs' lawsuit was a collateral attack, that was the end of the trial court's inquiry.

In their motion to compel, Plaintiffs requested Defendants be compelled to produce documents, supplements to interrogatories, and other information that Defendants had not yet produced in the discovery process. Even if Plaintiffs had been given the opportunity to produce "a forecast of evidence" showing a *prima facie* case on each of their claims for relief, their ability to make such a showing would have been hindered by the incomplete discovery process and the lack of a merits ruling on their motion to compel. Therefore, the appropriate disposition in the present case is to reverse the grant of summary judgment and the denial of Plaintiffs' motion to compel to allow the trial court to determine whether information relevant to any of Plaintiff's claims could be exposed though the discovery sought in Plaintiffs' motion to compel.[3]

### III. Conclusion

The trial court erred in determining that the entirety of Plaintiffs' complaint was a collateral attack on a valid judgment. While Plaintiffs' claims under the UDJA

---

[3] We note that the briefing to this Court from both Plaintiffs and Defendants focused *exclusively* on whether Plaintiffs' lawsuit was an impermissible collateral attack and whether the trial court erred in denying Plaintiffs' motion to compel. Neither party's brief addressed whether the trial court properly granted summary judgment to Defendants for any other reason, such as those discussed by the dissent.

were an impermissible collateral attack, Plaintiffs' complaint was sufficient to invoke the trial court's equitable jurisdiction pursuant to N.C.G.S. § 45-21.36 to argue the equitable grounds upon which the foreclosure sale should be enjoined. On remand, the trial court must determine whether the rights of the parties have become fixed pursuant to N.C.G.S. §§ 45-21.27 and 45-21.29A and, if not, which of Plaintiffs' claims may proceed in a N.C.G.S. § 45-21.34 action. The trial court must then conduct further proceedings, as appropriate, on those equitable claims.

We also reverse the trial court's denial of Plaintiffs' motion to compel. Because the trial court erred in granting summary judgment to Defendants, the denial of Plaintiffs' motion to compel was also in error.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

Judge DAVIS concurs.

Judge BERGER concurs in part and dissents in part by separate opinion.

BERGER, Judge, concurring in part, dissenting in part in separate opinion.

I concur with the majority's opinion that Plaintiffs' claim is an impermissible collateral attack on the foreclosure order that was properly entered pursuant to N.C. Gen. Stat. § 45-21.16.

As to Plaintiffs' remaining claims, however, because Plaintiffs are unable to produce evidence supporting essential elements of their claims, I would affirm the trial court and respectfully dissent from the majority opinion.

Pursuant to Rule 56(c) of the North Carolina Rules of Civil Procedure, summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2015). The review of a trial court's grant of summary judgment is *de novo*. *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) (citation omitted).

A party moving for summary judgment may prevail by showing either: (1) "an essential element of the opposing party's claim is nonexistent, or (2) . . . the opposing party cannot produce evidence to support an essential element of his . . . claim." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982) (citations omitted). Once the moving party has met this burden, the opposing party must "set forth *specific facts* showing that there is a genuine issue for trial." *Id*. at 369-70, 289 S.E.2d at 366 (citation omitted) (emphasis in original). Where the opposing party is unable to

demonstrate the existence of a material fact, a grant of summary judgment in favor of the movant is appropriate. *Id*. at 370, 289 S.E.2d at 366.

Evidence presented by the parties by way of discovery and affidavits established that in July 2008, Plaintiff Mary Reed obtained a loan in the amount of $376,000.00 payable to defendant Bank of America, N.A. ("BOA"). Said loan was secured by a Deed of Trust for property owned by both Plaintiffs located in Catawba County.

Plaintiffs did not use the property as their primary residence, but rather as income-producing vacation rental property. Despite having funds to do so, Plaintiffs failed to pay on the debt owed to BOA and defaulted on the Note in November 2009. Plaintiffs admit that they failed to pay their monthly mortgage obligation to BOA, as shown in a letter from Plaintiffs to BOA dated April 7, 2010 in which they state:

> (1) "I am writing this letter to explain our unfortunate set of circumstances that have caused us to become delinquent in our mortgage."
>
> (2) "[W]e cannot afford to pay what is owed to you. It is our full intention to pay what we owe." (Emphasis in original).
>
> (3) "[W]e had purchased several homes with the intent of repairing/remodeling etc. and selling . . . [but] we were not able to afford nor spend the time to do that."
>
> (4) "We just got another home back that we had sold/financed when the person could not pay the monthly[.]"

Plaintiffs did not meet eligibility requirements for relief under Fannie Mae's Making Home Affordable program. Even so, BOA sent a letter to Plaintiffs in March 2013 seeking to assist Plaintiffs with modification of the loan. Plaintiffs never responded to BOA's inquiry.

In August 2012, foreclosure proceedings were initiated with the Catawba County Clerk of Court. An Order of Sale was entered by the Clerk which was eventually upheld by the trial court and this Court. Plaintiffs filed this action for equitable relief in Catawba County Superior Court in March 2015.

The Deed of Trust at issue contained typical language setting forth the responsibilities of both parties. Importantly, paragraph 20 specifically states:

> 20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest on the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and [a]pplicable [l]aw. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA [Real Estate Settlement Procedures Act] requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the

3

> Loan Servicer or be transferred to a successor Loan
> Servicer and are not assumed by the Note purchaser unless
> otherwise provided by the Note purchaser.

A review of the pleadings and discovery in this matter reveals that there is no genuine issue of material fact, and the trial court's entry of summary judgment should be affirmed.

Plaintiffs failed to perform under the Note. Plaintiffs' claims for relief concern allegations that Defendants "concealed . . . the true ownership of the Note" and misrepresented the identity of "the actual owner of the Note." Plaintiffs, however, pursuant to the terms of the Deed of Trust set forth above, forfeited notice for transfer of ownership of the Note unless there was a change to the Loan Servicer. The record in this case reflects BOA was the loan servicer throughout, and communications regarding Plaintiffs failure to perform under the Note were with BOA.

Although couched as equitable claims for relief, both of Plaintiffs' remaining claims stem from the legal obligations under the original Note and Deed of Trust. Plaintiffs' legal claims were resolved in the previous case, and as such, this was a collateral attack.

However, even if these are considered equitable claims, the trial court's entry of summary judgment should be affirmed. This Court previously held that, even if the court's decision was based on incorrect reasoning,

> a trial court's 'ruling must be upheld if it is correct upon
> any theory of law,' and thus it should 'not be set aside

4

> merely because the court gives a wrong or insufficient reason for it.' *Manpower, Inc. v. Hedgecock*, 42 N.C. App. 515, 519, 257 S.E.2d 109, 113 (1979). *See also Sanitary District v. Lenoir*, 249 N.C. 96, 99, 105 S.E.2d 411, 413 (1958) (if correct result reached, judgment should not be disturbed even though [the] court may not have assigned the correct reasons for the judgment entered); *Payne v. Buffalo Reinsurance Co.*, 69 N.C. App. 551, 555, 317 S.E.2d 408, 411 (1984) (it is common learning that a correct judgment must be upheld even if entered for the wrong reason).

*Templeton v. Town of Boone*, 208 N.C. App. 50, 54, 701 S.E.2d 709, 712 (2010) (citation and brackets omitted). Accordingly, this Court may review a trial court's grant of summary judgment to determine if it is legally justifiable upon any theory of law. *See Id.* (citation omitted).

Negligent misrepresentation

"The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988), *rev'd on other grounds*, 329 N.C. 646, 407 S.E.2d 178 (1991) (citations omitted). In an ordinary debtor-creditor transaction, the lender's duty of care is defined by the loan agreement and does not extend beyond its terms. *Dallaire v. Bank of Am.*, N.A., 367 N.C. 363, 368, 760 S.E.2d 263, 266-67 (2014); *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 368 N.C. 440, 449, 781 S.E.2d 1, 8 (2015) ("Here plaintiffs fail to allege any special

circumstances that could establish a fiduciary relationship. Plaintiffs' allegations establish nothing more than a typical debtor-creditor relationship, wherein any duty would be created by contract through the loan agreement.").

In the present case, in regard to Defendants' contractually created duties under the loan agreement, the Deed of Trust expressly allows "[t]he Note or a partial interest in the Note . . . [to] be sold one or more times without prior notice to [Plaintiffs]." Furthermore, Plaintiffs fail to allege any special circumstances within the complaint which would establish a fiduciary relationship between the parties. Accordingly, Plaintiffs' relationship with Defendants is no more than the "typical debtor-creditor relationship," where Defendants' duties are controlled by the terms of the Deed of Trust. *See Arnesen*, 368 N.C. at 449, 781 S.E.2d at 8.

Pursuant to the express terms of the Deed of Trust, Plaintiffs forfeited notice of changes in ownership of the Note. Thus, because Defendants owed no duty to Plaintiffs regarding notice of ownership, contractually or otherwise, the negligent misrepresentation claim must fail because Plaintiffs cannot establish the elements necessary to create a genuine issue of material fact.

Even assuming, *arguendo*, that Defendants had a duty to inform Plaintiffs of changes in Note ownership, Plaintiffs' negligent misrepresentation claim must fail because the argument that Defendants' alleged misrepresentations "thwarted"

Plaintiffs' ability to determine "whether modifications were permitted by [the Note's owner]" has no merit.

The uncontroverted evidence shows that even during Fannie Mae's ownership of the Note, BOA, as loan servicer, "was authorized by Fannie Mae to make determinations with respect [to] borrower eligibility for loan modification programs offered by Fannie Mae." *See Royal v. Armstrong*, 136 N.C. App. 465, 473, 524 S.E.2d 600, 605 (uncontested evidence may be used during a motion for summary judgement to establish the nonexistence of an element necessary to sustain a claim), *disc. rev. denied*, 351 N.C. 474, 543 S.E.2d 495 (2000). Accordingly, BOA's alleged misrepresentations regarding the Note ownership would have no impact on Plaintiffs' eligibility for loan modification. Plaintiffs did not qualify because they were using the home as income producing rental property, not because of any actions on the part of Defendants.

Moreover, Plaintiffs' claim further fails because they cannot show detrimental reliance. Plaintiffs have acknowledged and conceded that they failed to make payments under the Note. There is no evidence, allegation, or assertion that Plaintiffs paid monies pursuant to the Note to any entity and failed to receive credit.

Breach of the implied covenant of good faith and fair dealing

Every contract in our State contains an implied covenant of good faith and fair dealing which works to prevent any party to a contract from doing anything to destroy

or injure the right of the other party to receive the benefits of the contract. *Maglione v. Aegis Family Health Ctrs.*, 168 N.C. App. 49, 56-57, 607 S.E.2d 286, 291 (2005). Ordinarily, a party's claim for breach of the covenant of good faith and fair dealing is "part and parcel" of a claim for breach of contract. *See Murray v. Nationwide Mutual Ins. Co.*, 123 N.C. App. 1, 19, 472 S.E.2d 358, 368 (1996), *disc. rev. denied*, 345 N.C. 344, 483 S.E.2d 172-73 (1997); *see also Suntrust Bank v. Bryan/Sutphin Props., LLC*, 222 N.C. App. 821, 833, 732 S.E.2d 594, 603 (holding that where a party does not breach any of the terms of a contract, "it would be illogical for this Court to conclude that [the same party] somehow breached implied terms" of that contract (citation omitted)), *disc. rev. denied*, 366 N.C. 417, 735 S.E.2d 180 (2012). However,

> North Carolina recognizes an [independent] action for breach of an implied duty of good faith and fair dealing in limited circumstances involving special relationships between parties, e.g., cases involving contracts for funeral services and insurance. Outside such circumstances, actions for breach of good faith fail. *See Hogan v. City of Winston-Salem*, 121 N.C. App. 414, 466 S.E.2d 303 (1996) (no merit to claim of breach of duty of good faith involving retirement benefits); *Allman v. Charles*, 111 N.C. App. 673, 433 S.E.2d 3 (1993) (in a real estate sales contract, refusing to find an implied promise to make a good faith effort to sell); [*Claggett v. Wake Forest Univ.*, 126 N.C. App. 602, 610-11, 486 S.E.2d 443, 448] (no breach o[f] good faith in denial of tenure where university rationally followed its procedures); *Phillips v. J.P. Stevens & Co.*, 827 F. Supp. 349 (M.D.N.C. 1993) (no implied duty of good faith in employment contracts).

8

*Mechanical Indus., Inc. v. O'Brien/Atkins Assocs., P.A.*, No. 1:97cv99, 1998 U.S. Dist. LEXIS 5389, at *11 (M.D.N.C. Feb. 4, 1998).

Here, as previously noted, Plaintiffs have failed to allege any special relationship with Defendants that would give rise to a duty beyond the "typical debtor-creditor relationship." *Arnesen*, 368 N.C. at 449, 781 S.E.2d at 8. Accordingly, because Plaintiffs legal claims were fully resolved in the prior foreclosure action, and because there is no special relationship between the parties, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing should be denied.

Motion to Compel

While it is ordinarily error for a trial court to rule on a summary judgment motion without addressing a pending motion to compel discovery, "the court is not barred in every case from granting summary judgment before discovery is completed." *Hamby v. Profile Prods., LLC*, 197 N.C. App. 99, 112-13, 676 S.E.2d 594, 603 (2009) (citation and internal quotation marks omitted). For instance, "[a] trial court's granting [of] summary judgment before discovery is complete may not be reversible error if the party opposing summary judgment is not prejudiced." *Id.* at 113, 676 S.E.2d at 603 (citations omitted).

Here, Plaintiffs cannot demonstrate prejudice. As mentioned above, the relationship between the parties did not extend beyond the contractual duties ordinarily found between debtors and creditors. The information that may have been

9

gathered through further discovery would not change the relationship between the parties, and Plaintiffs were not prejudiced.

The entry of summary judgment by the trial court dismissing Plaintiffs' equitable claims for (1) negligent misrepresentation, and (2) breach of the implied covenant of good faith and fair dealing was proper because necessary elements of both claims could not be supported, and no genuine issue of material fact existed. Therefore, the trial court did not err by granting Defendants' motion for summary judgment. Further, Plaintiffs have not been prejudiced by the trial court's ruling on the motion to compel, and I would affirm.